1

2

3

4

5

6

7

8

Anthony L. Martin
Nevada Bar No. 8177
anthony.martin@ogletreedeakins.com
Dana B. Salmonson
Nevada Bar No. 11180
dana.salmonson@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Wells Fargo Tower
Suite 1500
3800 Howard Hughes Parkway
Las Vegas, NV  89169
Telephone:  702.369.6800
Fax:  702.369.6888

*Attorneys for Defendants Las Vegas Sands Corp.
and Sands Aviation, LLC*

9

10

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

11

12

13

14

15

16

17

18

19

20

SEAN KENNEDY, individual; ANDREW SNIDER, individual; CHRISTOPHER WARD, individual; RANDALL WESTON, individual; RONALD WILLIAMSON, individual,

Plaintiffs,

vs.

LAS VEGAS SAND CORP., a Domestic Corporation; SANDS AVIATION, LLC, a Domestic Limited-Liability Company,

Defendants.

CASE NO.: 2:17-cv-00880-JCM-VCF

**DEFENDANTS LAS VEGAS SANDS CORP. AND SANDS AVIATION, LLC'S MOTION TO STRIKE PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT**

21

22

23

24

25

26

27

28

Defendants Las Vegas Sands Corp. and Sands Aviation, LLC (collectively referred to as "Defendants") by and through their undersigned counsel of record, hereby move to strike portions of Plaintiffs' First Amended Complaint ("FAC").  (ECF No. 55.)  Specifically, Defendants object to the inclusion of paragraphs 7 (second sentence only), 124, 127, 136, 138-140, 149-204, and 223-226 in the FAC, because they refer to facts that are unrelated and immaterial to the sole cause of action for violation of the Fair Labor Standards Act ("FLSA") asserted by Plaintiffs.  Not only are the allegations immaterial, they are salacious and have only been included to malign Defendants.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Wells Fargo Tower
Suite 1500, 3800 Howard Hughes Parkway
Las Vegas, NV  89169
Telephone: 702.369.6800

Further, Paragraph 149 includes factual allegations related to retaliation.  Consistent with this Court's Order (ECF No. 46) Plaintiffs' retaliation claim was dismissed, and Plaintiffs did not seek to add a retaliation claim in their Motion to File the First Amended Complaint.[1]  (ECF No. 49.) For these reasons, the above-referenced paragraphs should be stricken from the FAC.

This Motion is made pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and is based on the papers and pleadings on file herein, the included memorandum of points and authorities, and any oral argument entertained by this Court.

Dated this 16th day of August, 2017.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*/s/ Dana B. Salmonson*

Anthony L. Martin
Dana B. Salmonson
3800 Howard Hughes Parkway
Suite 1500
Las Vegas, NV  89169
*Attorneys for Defendants Las Vegas Sands Corp. and Sands Aviation, LLC*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND STATEMENT OF RELEVANT FACTS[2]

Plaintiffs have now had multiple opportunities to remove the sixty-seven (67) paragraphs of the lengthy 261 paragraph FAC that are spent disparaging Defendants rather than shedding light into why Plaintiffs believe they are somehow owed overtime, yet they have chosen not to do so. (*Id.* at 7 (second sentence only), 124, 127, 136, 138-140, 149-204, and 223-226.)

---

[1] In fact, Plaintiffs stated that "the allegations regarding retaliation and the second cause of action are also removed" in the First Amended Complaint.  (ECF No. 49.)

[2] Defendants have not filed an Answer to Plaintiff's Complaint because a Rule 12(f) motion enlarges the time to file the same.  *See* Fed. R. Civ. P. 12(a)(4).

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

Plaintiffs filed their Complaint on March 27, 2017 alleging two causes of action: (1) unpaid overtime, liquidated damages, and attorneys' fees pursuant to 29 U.S.C. 207(a), 29 U.S.C. § 216(b), and 29 U.S.C. 255(a); and (2) retaliation in violation of 29 U.S.C. § 215(a)(3).   (ECF No. 1.)   More specifically, Plaintiffs claim they are not exempt employees and are owed overtime for all hours worked including time they were "on-call."   (*See generally* ECF No. 1.)   Plaintiffs also claim retaliation in violation of 29 U.S.C. § 215(a)(3).   (*Id.*)

On May 3, 2017, Defendants filed a Motion for Partial Dismissal, seeking dismissal of Defendants Las Vegas Sands, LLC and Las Vegas Sands Corp. as well as dismissal of Plaintiffs' claim for retaliation.   (ECF No. 19.)   Plaintiffs filed their Opposition on June 14, 2017 (ECF No. 39) and Defendants filed their Reply on June 27, 2017.   (ECF No. 42.)   On July 5, 2017, the Court granted the Motion for Partial Dismissal.   (ECF No. 46.)

Additionally, Defendants filed a Motion to Strike Portions of Plaintiffs' Complaint filed concurrently with the Motion for Partial Dismissal.   (ECF No. 20.)   Plaintiffs filed their Opposition on June 14, 2017 and Defendants filed their Reply on June 27, 2017.   The Motion was set to be heard on August 11, 2017.   (ECF No. 50.)

Meanwhile, on July 11, 2017, Plaintiffs filed a Motion to file a First Amended Complaint. (ECF No. 49.)   In their Motion, Plaintiffs indicate that the First Amended Complaint adds "far more specificity and clarity as to Las Vegas Sands Corp.'s role as an employer of the Plaintiffs." (*Id.*)   Plaintiffs' also indicate that the "allegations regarding retaliation and the second cause of action are also removed."   (*Id.*)   Defendants filed a notice of non-opposition on July 25, 2017, indicating that they did not oppose the Motion pursuant to FRCP 15(a).   (ECF No. 52.)   On August 1, 2017, the Court granted Plaintiffs' Motion to Amend.   (ECF No. 54.)   The Court also denied Defendants' Motion to Strike as moot, and vacated the August 11, 2017 hearing.   (*Id.*)

3

Plaintiffs, again, put forth the following factual allegations that have **nothing** to do with Plaintiffs' claim for failure to pay overtime:

7.    ...These Defendants also unlawfully provide transportation to other individuals in violation of federal law.

124.    Defendants had a practice and procedure of purchasing unsafe aircraft and refurbishing them.

127.    Plaintiffs and similarly situated employees had no discretion to refuse to fly the Defendants' dangerous aircraft

136.    Defendants illegally utilized foreign workers to fly their planes and forced Plaintiffs and similarly situated employees to work with these workers.

138.    On October 9, 2015, Plaintiff Ronald Williamson piloted flight N789LS operating from Las Vegas, Nevada to Vancouver, Canada.  On this flight, multiple Singapore crew members were utilized, again under the Visa Waiver Program, including Singapore citizens as a copilot and as a flight attendant.

139.    On October 10, 2015, Plaintiff Christopher Ward piloted flight N572MS operating from Las Vegas, Nevada to Van Nuys, California with another Singapore citizen as a copilot.

140.    When Plaintiff Sean Kennedy brought this to Defendants' attention, Defendants proceeded to block pilots' ability from seeing the schedule.

149.    Defendants threatened and retaliated against Plaintiff Sean Kennedy for reporting patrons smoking marijuana in the plane.  Kennedy did not have discretion to remove Defendants' customers for consuming illegal drugs on the aircraft.

150.    On December 21st 2015, Plaintiff Sean Kennedy was scheduled on N972MS to pick up a patron at Van Nuys, California and fly him, to Las Vegas, Nevada.

151.    Once on the plane, Plaintiff Sean Kennedy smelled marijuana and asked the copilot if he smelled it too.  The copilot confirmed.

152.    Plaintiff Sean Kennedy called for the flight attendant.  The flight attendant came into the cockpit and confirmed that the patrons were smoking marijuana.  Mr. Kennedy told her to tell the passengers to stop smoking marijuana, as the smoke was going into the cockpit.  The passenger smoking marijuana refused to listen, and only stopped after Mr. Kennedy asked the passenger three (3) times.

153.    Upon landing, two (2) mechanics boarded the plane.  They confirmed that there was a distinct smell of marijuana.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

154. Jeff Saccoliti, Tom Mason, and Paul Oillcrist arrived on a golf cart and directed the crew to spray air freshener before the next flight. Plaintiff Sean Kennedy explained that the smell came from the patrons smoking marijuana. Mr. Kennedy suggested that someone call marketing and relay a message to the passenger that he cannot smoke illegal substances in the plane.

155. Paul Gillcrist, upon hearing the suggestion to report illegal substances, responded "it's none of your god damn business what these people do or have back there."

156. Plaintiff Sean Kennedy reminded Paul Gillcrist that interstate carriage of an illegal substance is a felony. Plaintiff Sean Kennedy advised Jeff Saccoliti, Tom Mason, and Mr. Gillcrist that this needs to be handled properly because next time he was going to notify Air Traffic Control.

157. Paul Gillcrist explained that allowing illegal substances is "what we do".

158. On December 25, 2015, four (4) days after the above referenced event, Plaintiff Kennedy developed a sinus infection and missed five (5) days of work.

159. Defendant Jeff Saccoliti pressured Plaintiff Sean Kennedy into coming back to work early.

160. Plaintiff Sean Kennedy eventually came back before he was fully healed.

161. On January 2nd 2016, Plaintiff Sean Kennedy was scheduled to fly from Las Vegas, Nevada to Van Nuys, California.

162. The flight was originally scheduled for early in the morning, but the clients changed the flight to 9:00 p.m. Plaintiff Sean Kennedy suffered from pilot fatigue.

163. The flight unexpectedly changed to a 3:00 p.m. departure as directed by the patrons.

164. Plaintiff Sean Kennedy and a copilot completed the first leg and arrived in Van Nuys, California. Prior to departure from Van Nuys, California, Plaintiff Sean Kennedy requested that his copilot take over flying the aircraft because Mr. Kennedy was suffering from pilot fatigue.

165. As the plane began the approach to Las Vegas, Nevada, the pilots received a message to turn around and fly back.

166. The pilots could not fly back because of fuel constraints, so the pilots landed in Las Vegas, Nevada as originally planned.

167. When Plaintiff Sean Kennedy landed, dispatch told Mr. Kennedy that he had to then fly to Long Beach, California. Mr. Kennedy advised that he was fatigued.

168. Plaintiff Kennedy called Chief Pilot Saccoliti to advise him of his fatigue.  Saccoliti started yelling, "Gillcrist is going to have your ass for this.  Monday morning 10:00 a.m. in the office you are going to get fired for this."

169. During the meeting, Mr. Gillcrist said that he had not decided if Mr. Kennedy was "gonna walk out here with [his] job yet."

170. Plaintiff Sean Kennedy replied that he had done nothing wrong.

171. Paul Gillcrist began to scream at Plaintiff Sean Kennedy and demanded that Mr. Kennedy "shut the fuck up and listen" to what he had to say.

172. Paul Gillcrist chastised Plaintiff Sean Kennedy because Mr. Kennedy was forty (40) years old and "can't do one more trip to LA" while suffering from pilot fatigue.

173. Paul Gillcrist announced that if "that is the case", he does not need Plaintiff Sean Kennedy as an employee.

174. Plaintiff Sean Kennedy explained that his illness was caused by the events of December 21st, 2015.

175. Paul Gillcrist responded if Plaintiff Sean Kennedy "can't handle the smoke then [he is] working in the wrong business."

176. Plaintiff Sean Kennedy explained to Paul Gillcrist that smoke of any kind can inhibit a pilot's ability to fly an aircraft.  Paul Gillcrist responded that Mr. Kennedy should find another job if smoke inhalation while piloting an aircraft is an issue for him.

177. Plaintiff Sean Kennedy then stated that the real issue was the drugs on board the planes that Defendants not only ignore but seemingly encourage.  Paul Gillcrist then resorted to false allegations against Plaintiff Sean Kennedy and insults.

178. Paul Gillcrist exclaimed that Plaintiff Sean Kennedy's stay at Defendant Sands Aviation had worn out its welcome and that it may be time to find another job.

179. Paul Gillcrist accused Plaintiff Sean Kennedy of calling dispatch after his flight, screaming and yelling; calling Mr. Kennedy a 'prima donna'.  The call that Mr. Gillcrist referred to lasted ten (10) seconds.

180. Paul Gillcrist stated that Mr. Gillcrist was the "one who hired [Plaintiff Sean Kennedy] and I don't wanna have to fire you.  It is best for both of us if you just resign."

181. Plaintiff Sean Kennedy responded that he was not going to resign and that Paul Gillcrist was going to have to fire him.  Mr. Kennedy further suggested that Mr. Gillcrist's biggest problem is that Mr. Kennedy refuses "to look the other way."

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

182.    After the meeting, Plaintiff Sean Kennedy asked the dispatcher if the dispatcher thought Mr. Kennedy was yelling.  The dispatcher was shocked that Mr. Kennedy would even ask.

183.    Paul Gillcrist's assistant later called Plaintiff Sean Kennedy to see if he was ok after enduring Gillcrist's incessant yelling.

184.    Defendants illegally conducted a commercial operation against federal regulations and forced Plaintiffs and others similarly situated to fly as part of this illegal commercial operation.  Plaintiffs did not have the discretion to refuse to fly on these illegal flights.

185.    Defendants held out Sand Aviation as a private carrier that is regulated under the provisions of 14 C.F.R. 91 and 14 C.F.R. 125, along with all taxes applicable. Defendants are prohibited from compensation from flights.

186.    In the summer of 2016, there was a flight conducted for Sony Pictures that included celebrities on one of its flights.

187.    As part of the agreements, Sony Pictures had certain requirements for the pilots in terms currency and air time for the plane.

188.    Upon information and belief, the similarly situated employees scheduled for this flight read the insurance requirements and realized they did not meet those requirements.

189.    The similarly-situated employees brought this to Paul Gillcrist's attention.

190.    In response, Paul Gillcrist chastised the pilots, saying that the pilots had cost the company revenue around $79,000.00.

191.    Because of the situated employees bringing to the attention of Defendant Paul Gillcrist the possibility of breaking the law, the situated employees were demoted to a less desirable plane.

192.    Upon information and belief, this was not an isolated incident of carrying out commercial operations.

193.    Plaintiff Sean Kennedy was contacted by customs officials in Bellingham, Washington in conjunction with his pilot duties.  Customs officials were concerned that the passengers aboard the flight Mr. Kennedy was piloting were compensating Defendants against federal regulations.

194.    Customs also advised Plaintiff Sean Kennedy that customs had been watching Defendants for operating as a commercial airline.

195.    Instead of conducting an internal investigation and rectifying the problem, Defendants directed pilots to avoid Bellingham.

196.  Defendants also conducted a flight with a Boeing 747 to Tahiti.

197.  This flight had sixty (60) commercial passengers including celebrities.

198.  This flight was falsely presented as a "demo" flight, wherein Sands Aviation allowed a third party to fly its airplane for the purpose of facilitating a sale. There was concern that some of the planes were grounded, not flying or generating revenue. Sands Aviation generated revenue by leasing these planes as "demos" to hide their operation as a commercial carrier. Defendants charged cost plus excess fees for these flights.

199.  Defendants utilized one (1) of their pilots to fly this plane, despite concerns over the legality of this flight.

200.  This was not the only time Defendants conducted business as a commercial airline and used its employees to do so.

201.  On December 28, 2015, Defendants utilized a "demo" flight VPVLK to lease a plane to a Saudi prince.

202.  Once again, Defendants used employees of Sands Aviation to complete this commercial flight.

203.  Defendants also "demoed" a flight for the President of an African nation multiple times. For these "demos", the President would always get the same plane.

204.  Upon information and belief, Defendants amassed a fleet to assist with these illegal commercial operations. Sands Corporations owns and operates approximately fifteen (15) airplanes for its private carrier fleet for its two (2) properties in the Las Vegas area.

223.  Defendants used training methods against the federal aviation regulations and forced Plaintiffs and similarly situated employees to train using these methods. Plaintiffs did not have discretion to use other methods.

224.  On October 26, 2016, Defendants trained a pilot while a flight attendant was on board.

225.  14 C.F.R. § 61.89 (a)(1) prohibits training of a pilot with additional passengers, which are defined as any extraneous individuals other than the trainer and trainee.

226.  This was a custom and practice of Defendants to force Plaintiffs and similarly situated employees to train illegal aliens. They did not have discretion to refuse.

These "allegations" contained in paragraphs 7 (second sentence only), 124, 127, 136, 138-140, 149-204, and 223-226, however, **are not relevant** to Plaintiffs' claim and appear to be

included for no other purpose than to put Defendants in a negative/false light.   Further, Paragraph 149 includes facts regarding retaliation, a claim that Plaintiffs are no longer pursuing in their FAC.

The immaterial, impertinent, and scandalous paragraphs as described herein must therefore be stricken from the FAC.

## II.   LEGAL ANALYSIS

### A.   Legal Standard for a Motion to Strike

The function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. *Sidney-Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983).   FRCP Rule 12(f) empowers a court to "order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter."   "The rationale behind granting motions to strike is to 'avoid ... prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegation any unnecessary notoriety.'" *G.K. Las Vegas Limited Partnership v. Simon Property Group, Inc.,* 460 F. Supp. 2d 1222, 1234 (D. Nev. 2006) (quoting 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 715 (2d ed.1990)).

While specific definitions of "immaterial," "impertinent" or "scandalous" may slightly differ, courts have generally interpreted Rule 12(f) to allow for the striking of pleading contents that have no essential or important relationship to the claim for relief or defenses pleaded or otherwise "improperly [cast] a derogatory light on someone, most typically a party to the action." *Fantasy, Inc. v. Fogarty,* 984 F.2d 1524, 1527 (9th Cir. 1993) (providing for the definition of "immaterial" for purposes of Rule 12(f)), rev'd on other grounds, *Fogarty v. Fantasy, Inc.,* 510 U.S. 517 (1994); 5A Clarles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1382, at 704 (2d ed. 1990).   An "impertinent" matter consists of statements that do not pertain and are unnecessary to the issues in question. *Fantasy, Inc.,* 984 F.2d at 1527.   A "'scandalous' matter is

that which casts a cruelly derogatory light on a party or other person." *Mazzeo v. Gibbons,* 649 F. Supp. 2d 1182, 1202 (D. Nev. 2009) (citing *In re 2TheMart.com Inc. Sec. Lit.,* 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)).

**B.** **The Court Should Strike Paragraphs 7 (second sentence only), 124, 127, 136, 138-140, 149-204, and 223-226from the FAC.   These Factual Allegations are Immaterial, Impertinent, and Scandalous**

These "allegations" contained in paragraphs 7 (second sentence only), 124, 127, 136, 138-140, 149-204, and 223-226, **are not relevant** to Plaintiffs' sole claim for failure to pay overtime and appear to be included for no other purpose than to malign the Defendants.   They are unnecessary to the issues in question, namely whether the Plaintiffs are entitled to overtime under the FLSA.   Under the FLSA, covered employers must pay employees for hours worked in excess of 40 in a work week "at a rate not less than one and one-half times the regular rate" of pay.   29 U.S.C. § 207(a)(1).   Importantly, the FLSA includes several statutory exemptions from its overtime pay requirements.   Not one of these spurious allegations goes to the issue of whether Plaintiffs were exempt from overtime pursuant to the FLSA.   Namely, these factual allegations do not demonstrate why Plaintiffs may not be exempt from the overtime provisions of the FLSA.   Nor do the above-referenced factual allegations demonstrate the alleged amount of overtime Plaintiffs believe they should be compensated for.   If the factual allegations are not necessary to the issues in question, striking them from the Complaint is appropriate.   *Fantasy, Inc.,* 984 F.2d at 1527.

Because of this, the factual allegations should be disregarded and struck.

///

///

///

///

///

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Wells Fargo Tower
Suite 1500, 3800 Howard Hughes Parkway
Las Vegas, NV 89169
Telephone: 702.369.6800

**III.    CONCLUSION**

Pursuant to FRCP 12(f), paragraphs 7 (second sentence only), 124, 127, 136, 138-140, 149-204, and 223-226 should be struck from the FAC in their entirety.  Such immaterial, impertinent, and scandalous factual allegations have no essential or important relationship to the claim for relief.

Dated this 16th day of August, 2017.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*/s/ Dana B. Salmonson*
Anthony L. Martin
Dana B. Salmonson
3800 Howard Hughes Parkway
Suite 1500
Las Vegas, NV  89169
*Attorneys for Defendants Las Vegas Sands Corp. and Sands Aviation, LLC*

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

11

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically transmitted the attached **DEFENDANTS LAS VEGAS SANDS CORP., SANDS AVIATION, LLC, AND LAS VEGAS SANDS, LLC'S MOTION TO STRIKE PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Andre M. Lagomarsino, Esq.**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby further certify that service of the foregoing **DEFENDANTS LAS VEGAS SANDS CORP., SANDS AVIATION, LLC, AND LAS VEGAS SANDS, LLC'S MOTION TO STRIKE PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT** was also made by depositing a true and correct copy of same for mailing, first class mail, postage prepaid thereon, at Las Vegas, Nevada, to the following:

Andre M. Lagomarsino, Esq.
Lagomarsino Law
3005 West Horizon Ridge Parkway
Suite 241
Henderson, NV 89052
*Attorneys for Plaintiffs*

Dated this 16th day of August, 2017.

                                        */s/ Joanne  Conti*
                                        An Employee of Ogletree, Deakins, Nash,
                                        Smoak & Stewart, P.C.