**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| SEAN KENNEDY, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>LAS VEGAS SANDS CORP., et al.,<br><br>Defendants. | Case No. 2:17-cv-00880-JCM-VCF<br><br>**ORDER**<br><br>MOTION TO STRIKE (ECF NO. 56) |

Before the Court are Defendants Las Vegas Sands Corp. and Sands Aviation, LLC's Motion to Strike Portions of Plaintiffs' First Amended Complaint (ECF No. 56); Plaintiffs Sean Kennedy, Andrew Snider, Christopher Ward, Randall Weston, and Ronald Williamson's response (ECF No. 59); and Defendants' reply (ECF No. 61). For the reasons stated below, Defendants' motion is granted in part and denied in part.

## I. BACKGROUND

The first amended complaint alleges that the Defendants own numerous hotels in Las Vegas and provide aviation services to their executives and guests. (ECF No. 55 at 2-3). Plaintiffs are current and former pilots allegedly employed by Defendants to fly those hotel executives and guests to and from Las Vegas. *Id*. On August 2, 2017, Plaintiffs filed their first amended complaint against the Defendants for failing to compensate Plaintiffs for overtime hours worked in violation of 29 U.S.C. §§ 207(a) and 255. (*Id.* at 30). Plaintiffs seek back overtime pay, various types of damages, and attorneys' fees. (*Id.*)

On August 16, 2017, Defendants filed a motion to strike "[s]ixty-seven (67) paragraphs of the … 261 paragraph" first amended complaint: 7 (second sentence only), 124, 127, 136, 138-140, 149-204, and 223-226. (ECF No. 56 at 2). The Defendants argue that the Court should strike these allegations because

they are immaterial, impertinent, and scandalous and have no essential or important relationship to Plaintiffs' claims. (*Id*. at 10). The Plaintiffs argue that the subject allegations go directly to the amount of discretion Plaintiffs had in their positions as pilots, which is a material factor the Court must consider when determining whether they are eligible for overtime under the Fair Labor Standards Act ("FLSA"). (ECF No. 59 at 2, 6-7).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a Rule 12(f) motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994)). In deciding a motion to strike, courts may not resolve disputed and substantial factual or legal issues. *Id*. And "[i]f the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits." *Sliger v. Prospect Mortg., LLC*, 789 F.Supp.2d 1212, 1216 (E.D. Cal. 2011) (citing *Whittlestone, Inc*., 618 F.3d at 973). Rule 12(f) motions should not be used as a means to have certain portions of a complaint dismissed or to obtain summary judgment as to those portions, as these actions are better suited for a Rule 12(b)(6) motion or a Rule 56 motion. *Whittlestone, Inc*., 618 F.3d at 974.

An allegation is "immaterial" it if "has no essential or important relationship to the claim for relief or the defenses being pleaded." *See Fogerty*, 984 F.2d at 1527 (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706-07 (1990)). "Impertinent" matters consist of statements that do not pertain, and are not necessary, to the issues in question. *Id*. The concepts of

"impertinent" and "immaterial" matters have considerable overlap. *See* 5C Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*, § 1382, 463-64 (3d ed. 2010). An allegation is "scandalous" if it improperly casts a "cruelly derogatory light" on someone, most typically on a party to the action. *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F.Supp.2d 955, 965 (C.D.Cal. 2000); *see also* 5C Wright et al., *supra*, § 1382 at 465-66 ("It is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action.").

A Rule 12(f) motion to strike is an extreme and drastic remedy—it is generally disfavored. *See Armed Forces Bank, N.A. v. FSG-4, LLC*, No. 2:11-cv-654-JCM-CWH, 2011 WL 5513186, at *4 (D. Nev. Nov. 10, 2011); *see also* 5C Wright et al., *supra*, § 1382 at 434-36 ("Rule 12(f) motions to strike … are not favored, often being considered purely cosmetic or 'time wasters'). In ruling on a motion to strike, the Court accepts as true the factual allegations underlying the claim. *Kelly v. Kosuga*, 358 U.S. 516, 516 (1959). Whether to grant a motion to strike lies within the discretion of the district court. *See Whittlestone, Inc.*, 618 F.3d at 973; *see also* 5C Wright et al., *supra*, § 1382 at 433 ("The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike").

### III. DISCUSSION

As a matter of background, a brief discussion of Plaintiffs' claims under the FLSA and the related statutory exemptions is warranted. Among the protections the FLSA provides employees is the right to be paid at time and a half for work above the statutory limit, generally 40 hours per week. 29 U.S.C. § 207. Several exemptions to this requirement exist, including the "administrative" and "highly compensated" employee exemptions. 29 U.S.C. § 213(a)(1). Whether an employee exercises discretion in his or her position is relevant to both exemptions. *See* 29 C.F.R. § 541.200(a) (stating the administrative exemption applies to individuals whose "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance;" 29 C.F.R § 541.601 (stating the highly compensated

exemption applies to individuals who, among other requirements, "customarily and regularly perform any one or more of the exempt duties or responsibilities of an…administrative…employee."). The Court notes that the amended complaint alleges that Plaintiffs' primary duties did not include the exercise of discretion and independent judgment with respect to matters of significance. (ECF No. 55 at 3).

The parties present one issue in this motion to strike: whether certain factual allegations in the complaint are "immaterial, impertinent, or scandalous" in the context of a labor and employment dispute for overtime wages under the FLSA. For clarity, the Court has separated the subject allegations into four sections.

**1. Flying Dangerous Aircraft Allegations**

Paragraphs 124 and 127 state:

> 124. Defendants had a practice and procedure of purchasing unsafe aircraft and refurbishing them.
>
> 127. Plaintiffs and similarly situated employees had no discretion to refuse to fly the Defendants' dangerous aircraft

(ECF No. 56 at 4).

Paragraphs 124-127 are listed in the amended complaint under the section entitled "Plaintiffs were afforded little to no discretion," and involve the same charge: Defendants allegedly forced Plaintiffs and "similarly situated employees" to fly Defendants' dangerous and unsafe aircraft. (ECF No. 55 at 16-17). The amended complaint alleges that Plaintiffs warned Defendants numerous times that these dangerous aircrafts were in need of care and maintenance and Plaintiffs were forced to make several emergency landings due "Defendants' negligence" in maintaining the aircraft. (*Id.*)

The Court finds that the allegations in paragraphs 124 and 127 are not "immaterial, impertinent, or scandalous." Plaintiffs argue that these paragraphs "expose how Defendants put Plaintiffs in unsafe conditions and Plaintiffs did not have the discretion to refuse such assignments." (ECF No. 56 at 7).

Whether these Plaintiffs exercised "discretion and independent judgment with respect to matters of significance" relates to the Plaintiffs underlying claim for relief. *See* 29 C.F.R. § 541.202(b) ("The phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises."). To characterize these allegations as improperly casting a "cruelly derogatory light" on Defendants is not appropriate because the challenged allegations describe acts or events that are related to the subject matter of the action. Therefore, Defendants' motion to strike is denied as to Paragraphs 124 and 127.

**2. Working and Training with Illegal Co-pilots and Crewmembers Allegations**

Paragraphs 136, 138-140, and 223-226 state:

> 136. Defendants illegally utilized foreign workers to fly their planes and forced Plaintiffs and similarly situated employees to work with these workers.
>
> 138. On October 9, 2015, Plaintiff Ronald Williamson piloted flight N789LS operating from Las Vegas, Nevada to Vancouver, Canada. On this flight, multiple Singapore crew members were utilized, again under the Visa Waiver Program, including Singapore citizens as a copilot and as a flight attendant.
>
> 139. On October 10, 2015, Plaintiff Christopher Ward piloted flight N572MS operating from Las Vegas, Nevada to Van Nuys, California with another Singapore citizen as a copilot.
>
> 140. When Plaintiff Sean Kennedy brought this to Defendants' attention, Defendants proceeded to block pilots' ability from seeing the schedule.
>
> . . .
>
> 223. Defendants used training methods against the federal aviation regulations and forced Plaintiffs and similarly situated employees to train using these methods. Plaintiffs did not have discretion to use other methods.
>
> 224. On October 26, 2016, Defendants trained a pilot while a flight attendant was on board.

>225. 14 C.F.R. § 61.89 (a)(l) prohibits training of a pilot with additional passengers, which are defined as any extraneous individuals other than the trainer and trainee.
>
>226. This was a custom and practice of Defendants to force Plaintiffs and similarly situated employees to train illegal aliens. They did not have discretion to refuse.

(ECF No. 56 at 4, 8).

Paragraphs 136-140 and 223-226 are also listed in the amended complaint under the section entitled "Plaintiffs were afforded little to no discretion" and involve scenarios where Plaintiffs and similarly situated employees are allegedly forced to (1) pilot aircraft with "illegally utilized foreign workers"; (2) train to fly aircraft under methods contrary to the federal aviation regulations; and (3) train illegal aliens. (ECF No. 55 at 16, 18-19, 27). Defendants argue that "[a]llegations of purported illegal activity have nothing to do with whether or not Plaintiffs exercised discretion and are exempt from overtime." (ECF No. 61 at 4). Plaintiffs argue these allegations "expose how Defendants forced Plaintiffs to engage in illegal activity" and "put plaintiffs in unsafe conditions," "even when Plaintiffs brought such illegality to their attention, which directly goes to how much discretion Plaintiffs actually had." (ECF No. 59 at 7).

The Court finds that striking the subject allegations in the pleading as "immaterial, impertinent, or scandalous matter" is not warranted. For similar reasons discussed in the previous section, these allegations are neither immaterial nor impertinent, because they pertain and are related to whether the Plaintiffs had the discretion necessary to qualify under certain statutory exemptions and, thus, whether they are eligible for overtime under the FLSA. The Defendants also argue that "[n]one of the facts Defendants seek to strike demonstrate or refute Plaintiffs complete control of the aircrafts in which they piloted." (ECF No. 61 at 5). However, allegations about being forced to share flying duties and responsibilities with "Singapore citizens as … copilot[s]" or to pilot and operate aircraft under methods

against the federal aviation regulations (ECF No. 56 at 4, 8) reflects on Plaintiffs' control of the aircrafts.

Therefore, Defendants' motion to strike is denied as to Paragraphs 136, 138-140, and 223-226.

### 3. Passengers Smoking Marijuana Allegations

Paragraphs 149-183 state:

> 149. Defendants threatened and retaliated against Plaintiff Sean Kennedy for reporting patrons smoking marijuana in the plane. Kennedy did not have discretion to remove Defendants' customers for consuming illegal drugs on the aircraft.[1]
>
> 150. On December 21st, 2015, Plaintiff Sean Kennedy was scheduled on N972MS to pick up a patron at Van Nuys, California and fly him, to Las Vegas, Nevada.
>
> 151. Once on the plane, Plaintiff Sean Kennedy smelled marijuana and asked the copilot if he smelled it too. The copilot confirmed.
>
> 152. Plaintiff Sean Kennedy called for the flight attendant. The flight attendant came into the cockpit and confirmed that the patrons were smoking marijuana. Mr. Kennedy told her to tell the passengers to stop smoking marijuana, as the smoke was going into the cockpit. The passenger smoking marijuana refused to listen, and only stopped after Mr. Kennedy asked the passenger three (3) times.
>
> 153. Upon landing, two (2) mechanics boarded the plane. They confirmed that there was a distinct smell of marijuana.
>
> 154. Jeff Saccoliti, Tom Mason, and Paul [G]illcrist arrived on a golf cart and directed the crew to spray air freshener before the next flight. Plaintiff Sean Kennedy explained that the smell came from the patrons smoking marijuana. Mr. Kennedy suggested that someone call marketing and relay a message to the passenger that he cannot smoke illegal substances in the plane.
>
> 155. Paul Gillcrist, upon hearing the suggestion to report illegal substances, responded "it's none of your god damn business what these people do or have back there."

---

[1] Defendants argue that Paragraph 149 should be stricken because it relates to a retaliation claim that was previously dismissed from the case. (ECF. No. 56 at 2). While Paragraph 149 mentions retaliation, it also deals with Plaintiffs' discretion in their work duties, which is relevant to Plaintiffs' FLSA claim in their amended complaint.

156. Plaintiff Sean Kennedy reminded Paul Gillcrist that interstate carriage of an illegal substance is a felony. Plaintiff Sean Kennedy advised Jeff Saccoliti, Tom Mason, and Mr. Gillcrist that this needs to be handled properly because next time he was going to notify Air Traffic Control.

157. Paul Gillcrist explained that allowing illegal substances is "what we do".

158. On December 25, 2015, four (4) days after the above referenced event, Plaintiff Kennedy developed a sinus infection and missed five (5) days of work.

159. Defendant Jeff Saccoliti pressured Plaintiff Sean Kennedy into coming back to work early.

160. Plaintiff Sean Kennedy eventually came back before he was fully healed.

161. On January 2nd[,] 2016, Plaintiff Sean Kennedy was scheduled to fly from Las Vegas, Nevada to Van Nuys, California.

162. The flight was originally scheduled for early in the morning, but the clients changed the flight to 9:00 p.m. Plaintiff Sean Kennedy suffered from pilot fatigue.

163. The flight unexpectedly changed to a 3:00 p.m. departure as directed by the patrons.

164. Plaintiff Sean Kennedy and a copilot completed the first leg and arrived in Van Nuys, California. Prior to departure from Van Nuys, California, Plaintiff Sean Kennedy requested that his copilot take over flying the aircraft because Mr. Kennedy was suffering from pilot fatigue.

165. As the plane began the approach to Las Vegas, Nevada, the pilots received a message to turn around and fly back.

166. The pilots could not fly back because of fuel constraints, so the pilots landed in Las Vegas, Nevada as originally planned.

167. When Plaintiff Sean Kennedy landed, dispatch told Mr. Kennedy that he had to then fly to Long Beach, California. Mr. Kennedy advised that he was fatigued.

168. Plaintiff Kennedy called Chief Pilot Saccoliti to advise him of his fatigue. Saccoliti started yelling, "Gillcrist is going to have your ass for this. Monday morning 10:00 a.m. in the office you are going to get fired for this."

169. During the meeting, Mr. Gillcrist said that he had not decided if Mr. Kennedy was "gonna walk out here with [his] job yet."

170. Plaintiff Sean Kennedy replied that he had done nothing wrong.

171. Paul Gillcrist began to scream at Plaintiff Sean Kennedy and demanded that Mr. Kennedy "shut the fuck up and listen" to what he had to say.

172. Paul Gillcrist chastised Plaintiff Sean Kennedy because Mr. Kennedy was forty (40) years old and "can't do one more trip to LA" while suffering from pilot fatigue.

173. Paul Gillcrist announced that if "that is the case", he does not need Plaintiff Sean Kennedy as an employee.

174. Plaintiff Sean Kennedy explained that his illness was caused by the events of December 21st, 2015.

175. Paul Gillcrist responded if Plaintiff Sean Kennedy "can't handle the smoke then [he is] working in the wrong business."

176. Plaintiff Sean Kennedy explained to Paul Gillcrist that smoke of any kind can inhibit a pilot's ability to fly an aircraft. Paul Gillcrist responded that Mr. Kennedy should find another job if smoke inhalation while piloting an aircraft is an issue for him.

177. Plaintiff Sean Kennedy then stated that the real issue was the drugs on board the planes that Defendants not only ignore but seemingly encourage. Paul Gillcrist then resorted to false allegations against Plaintiff Sean Kennedy and insults.

178. Paul Gillcrist exclaimed that Plaintiff Sean Kennedy's stay at Defendant Sands Aviation had worn out its welcome and that it may be time to find another job.

179. Paul Gillcrist accused Plaintiff Sean Kennedy of calling dispatch after his flight, screaming and yelling; calling Mr. Kennedy a 'prima donna'. The call that Mr. Gillcrist referred to lasted ten (10) seconds.

> 180. Paul Gillcrist stated that Mr. Gillcrist was the "one who hired [Plaintiff Sean Kennedy] and I don't wanna have to fire you. It is best for both of us if you just resign."
>
> 181. Plaintiff Sean Kennedy responded that he was not going to resign and that Paul Gillcrist was going to have to fire him. Mr. Kennedy further suggested that Mr. Gillcrist's biggest problem is that Mr. Kennedy refuses "to look the other way."
>
> 182. After the meeting, Plaintiff Sean Kennedy asked the dispatcher if the dispatcher thought Mr. Kennedy was yelling. The dispatcher was shocked that Mr. Kennedy would even ask.
>
> 183. Paul Gillcrist's assistant later called Plaintiff Sean Kennedy to see if he was ok after enduring Gillcrist's incessant yelling.

(ECF No. 56 at 4-7).

The Court finds that the allegations in Paragraphs 149-157 are not immaterial, impertinent, or scandalous matters that should be stricken. Defendants assert that "[n]ot one of these spurious allegations goes to the issue of whether Plaintiffs were exempt from overtime pursuant to the FLSA." (ECF Nos. 56 at 10). But this misses the point of the above allegations, which is that Plaintiffs "did not have discretion to remove Defendants' customers for consuming illegal drugs on the aircraft." (ECF No. 56 at 4). The allegations do show, at the very least, that whether Plaintiffs could maintain the safety and control of their aircrafts and the passengers onboard is a disputed issue. *See Whittlestone*, Inc., 618 F.3d at 973 (holding that in deciding motions to strike, courts may not resolve disputed and substantial factual or legal issues). Therefore, Defendants' motion to strike is denied as to Paragraphs 149-157.

However, the Court finds that Paragraphs 158-183 contain immaterial and impertinent allegations. While Plaintiffs assert Mr. Kennedy was "pressured" into coming back to work while incapacitated and was yelled at and threatened by Mr. Gillcrist, Plaintiffs fail to assert that Mr. Kennedy was forced to come back to work or that any negative consequences arose from the incident. The allegations actually indicate that Mr. Kennedy was able to direct the flight as he saw fit, by having the co-pilot take over and landing

the flight as originally scheduled, without Defendants' interference beyond an angry phone call. While these allegations could potentially be tenuously related to Plaintiffs' allegations regarding marijuana use, these allegations are too attenuated to bear an essential or important relationship to Plaintiffs' claim for relief. In addition, these allegations go far beyond the "short and plain statement of the claim" the amended complaint should contain. Fed. R. Civ. P. 8(a). Therefore, Defendants' motion to strike is granted as to Paragraphs 158-183.

**4. Commercial Operations Allegations**

Paragraphs 7 and 184-204 state:

> 7. …These Defendants also unlawfully provide transportation to other individuals in violation of federal law.
>
> 184. Defendants illegally conducted a commercial operation against federal regulations and forced Plaintiffs and others similarly situated to fly as part of this illegal commercial operation. Plaintiffs did not have the discretion to refuse to fly on these illegal flights.
>
> 185. Defendants held out Sand Aviation as a private carrier that is regulated under the provisions of 14 C.F.R. 91 and 14 C.F.R. 125, along with all taxes applicable. Defendants are prohibited from compensation from flights.
>
> 186. In the summer of 2016, there was a flight conducted for Sony Pictures that included celebrities on one of its flights.
>
> 187. As part of the agreements, Sony Pictures had certain requirements for the pilots in terms currency and air time for the plane.
>
> 188. Upon information and belief, the similarly situated employees scheduled for this flight read the insurance requirements and realized they did not meet those requirements.
>
> 189. The similarly-situated employees brought this to Paul Gillcrist's attention.
>
> 190. In response, Paul Gillcrist chastised the pilots, saying that the pilots had cost the company revenue around $79,000.00.

191. Because of the situated employees bringing to the attention of Defendant Paul Gillcrist the possibility of breaking the law, the situated employees were demoted to a less desirable plane.

192. Upon information and belief, this was not an isolated incident of carrying out commercial operations.

193. Plaintiff Sean Kennedy was contacted by customs officials in Bellingham, Washington in conjunction with his pilot duties. Customs officials were concerned that the passengers aboard the flight Mr. Kennedy was piloting were compensating Defendants against federal regulations.

194. Customs also advised Plaintiff Sean Kennedy that customs had been watching Defendants for operating as a commercial airline.

195. Instead of conducting an internal investigation and rectifying the problem, Defendants directed pilots to avoid Bellingham.

196. Defendants also conducted a flight with a Boeing 747 to Tahiti.

197. This flight had sixty (60) commercial passengers including celebrities.

198. This flight was falsely presented as a "demo" flight, wherein Sands Aviation allowed a third party to fly its airplane for the purpose of facilitating a sale. There was concern that some of the planes were grounded, not flying or generating revenue. Sands Aviation generated revenue by leasing these planes as "demos" to hide their operation as a commercial carrier. Defendants charged cost plus excess fees for these flights.

199. Defendants utilized one (1) of their pilots to fly this plane, despite concerns over the legality of this flight.

200. This was not the only time Defendants conducted business as a commercial airline and used its employees to do so.

201. On December 28, 2015, Defendants utilized a "demo" flight VPVLK to lease a plane to a Saudi prince.

202. Once again, Defendants used employees of Sands Aviation to complete this commercial flight.

203. Defendants also "demoed" a flight for the President of an African nation multiple times. For these "demos", the President would always get the same plane.

> 204. Upon information and belief, Defendants amassed a fleet to assist with these illegal commercial operations. Sands Corporations owns and operates approximately fifteen (15) airplanes for its private carrier fleet for its two (2) properties in the Las Vegas area.

(ECF No. 56 at 4, 7-8).

The Court finds the allegations in Paragraphs 7 and 184-192 are not immaterial, impertinent, or scandalous. As Plaintiffs argue, these allegations show "how Defendants forced Plaintiffs to engage in illegal activity even when Plaintiffs brought such illegality to their attention" and that "Plaintiffs did not … have the necessary discretion to refuse illegal activities." (ECF No. 59 at 7). Because Plaintiffs' discretion in their duties is relevant to their claim under the FLSA, Defendants' motion to strike is denied as to Paragraphs 7 and 184-192.[2]

However, Paragraphs 193-204 contain immaterial and impertinent information. The concerns of customs officials and allegations that Defendants improperly classified flights as "demos" rather than commercial ventures have nothing to do with Plaintiffs' underlying FLSA claim and do not show "whether Plaintiffs are entitled to overtime or whether they are exempted." (ECF No. 61 at 3-5). While Plaintiffs allege that Defendants acted illegally in classifying flights as "demos" and used employees on these flights, Plaintiffs fail to allege that they were forced to serve on these flights or that they raised concerns over these flights that were ignored. These allegations are too attenuated from the issue of Plaintiffs' discretion to bear an essential or important relationship to Plaintiffs' claim for relief. Therefore, Defendants' motion to strike is granted as to Paragraphs 193-204.

---

[2] In their reply, Defendants direct the Court to Federal Rule of Evidence 403 and argue that "Plaintiffs' attack on Defendants' character outweighs the benefits of including such facts." (ECF No. 61 at 6). Rule 403 governs the admission of evidence, not allegations pled in a complaint. In addition, as Plaintiffs raised this issue for the first time in its reply brief, the Court need not address this argument. *See Sophanthavong v. Palmateer*, 378 F.3d 859, 871-72 (9th Cir. 2004); *United States v. Gianelli*, 543 F.3d 1178, 1184 n.6 (9th Cir. 2008); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Defendants' Motion to Strike (ECF No. 56) is GRANTED with respect to Paragraphs 158-183 and 193-204.

IT IS FURTHER ORDERED that Defendants' Motion to Strike (ECF No. 56) is DENIED with respect to Paragraphs 7, 124, 127, 136, 138-140, 149-157, 184-192, and 223-226.

IT IS SO ORDERED.

DATED this 21st day of September, 2017.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE