Anthony L. Martin
Nevada Bar No. 8177
anthony.martin@ogletreedeakins.com
Dana B. Salmonson
Nevada Bar No. 11180
dana.salmonson@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Wells Fargo Tower
Suite 1500
3800 Howard Hughes Parkway
Las Vegas, NV  89169
Telephone:  702.369.6800
Fax:  702.369.6888

*Attorneys for Defendants*
*Sands Aviation, LLC and Las Vegas Sands Corp.*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| SEAN KENNEDY, individual; ANDREW SNIDER, individual; CHRISTOPHER WARD, individual; RANDALL WESTON, individual; RONALD WILLIAMSON, individual,<br><br>Plaintiffs,<br><br>vs.<br><br>LAS VEGAS SAND CORP., a Domestic Corporation; and SANDS AVIATION, LLC, a Domestic Limited-Liability Company,<br><br>Defendants. | Case No.:  2:17-cv-00880-JCM-VCF<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFFS' EXEMPT STATUS** |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule of Civil Procedure 56-1, Defendants Sands Aviation, LLC ("Sands Aviation" or "Company") and Las Vegas Sands Corp. ("LVSC") (collectively, "Defendants") move this Court for summary judgment on the claim for unpaid overtime under 29 U.S.C. § 201, *et seq*., the Fair Labor Standards Act (the "FLSA") made by Plaintiffs Sean Kennedy ("Kennedy"), Andrew Snider ("Snider"), Christopher Ward ("Ward"), Randall Weston ("Weston"), and Ronald Williamson ("Williamson") (collectively, "Plaintiffs"). Plaintiffs are exempt from overtime compensation under the FLSA as each Plaintiff

was highly-compensated and performed a combination of administrative and executive exemption duties. Accordingly, summary judgment in favor of Defendants is warranted.

This Motion is supported by the following Memorandum of Points and Authorities, the Declaration of Dana B. Salmonson and exhibits thereto, attached hereto as **Exhibit A**[1], the Declaration of Mirtha Johnson and exhibits thereto, attached hereto as **Exhibit B**, the pleadings and papers on file, and any such further argument as the Court may deem appropriate.

DATED this 25th day of February, 2019.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*/s/ Dana B. Salmonson*
Anthony L. Martin
Nevada Bar No. 8177
Dana B. Salmonson
Nevada Bar No. 11180
Wells Fargo Tower
Suite 1500
3800 Howard Hughes Parkway
Las Vegas, NV  89169
*Attorneys for Defendants*
*Sands Aviation, LLC and Las Vegas Sands Corp.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

As Pilots-in-Command ("PICs") employed by Sands Aviation,[2] Plaintiffs were expected to exercise discretion and independent judgment necessary to safely pilot their flights, as well as manage others. And Plaintiffs were highly paid to meet those expectations. Nevertheless, Plaintiffs claim they were misclassified as exempt from overtime compensation under the FLSA.[3]

---

[1] **Exhibit A** authenticates the following depositions and exhibits authenticated at those depositions: Ward; Kennedy; Snider; Weston; Williamson; Jennifer Green ("Green"); Paul Gillcrist ("Gillcrist"); Thomas Mason ("Mason"); and Jeff Saccoliti ("Saccoliti").

[2] All Plaintiffs were employed by Sands Aviation, not LVSC. Accordingly, LVSC has concurrently filed a Motion for Summary Judgment addressing LVSC's status as a purported employer. The joint employer issue does not need to be resolved for purposes of deciding this Motion.

[3] Plaintiffs seek damages for work allegedly performed every second of every day they were employed by Sands Aviation. If the Court determines Plaintiffs are not exempt from overtime, Defendants maintain Plaintiffs are not entitled to additional compensation. To the extent this Motion is denied, Defendants have concurrently filed a Motion for Summary Judgment addressing the purported compensability of alleged time worked.

2

Plaintiffs' claim fails because they each performed at least one of the duties falling under the administrative and/or executive exemption and were "highly compensated," as defined by the FLSA. More specifically, each Plaintiff earned an annual, six-figure salary exceeding $125,000 during the operative period, qualifying Plaintiffs as "highly-compensated employees" under the FLSA. As such, Plaintiffs were properly classified by Sands Aviation as employees who were not entitled to overtime compensation. For these reasons, Plaintiffs' overtime claim fails as a matter of law and summary judgment in Defendants' favor is warranted.

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.  Flights Plaintiffs Piloted for Sands Aviation

Sands Aviation conducts a sophisticated aviation operation that "is charged with the safe and efficient operation of Company aircraft for the private transportation of personnel and guests of Las Vegas Sands Corp. in accordance with the scope and provisions of 14 CFR Part 91[4] under authority of one or more Letters of Deviation Authority issued under 14 CFR 91.147." (Mason Deposition ("Mason Depo."), attached as Exhibit A-6 ("Ex. A-6"), at 36:18-37:3, Ex. 19 to Mason Depo., Ex. A-6, at P008127.) Sands Aviation transports third parties from multiple related entities, executives, and certain executive's family members. (Green Deposition ("Green Depo."), attached as Exhibit A-7 ("Ex. A-7"), at 38:17-39:2, 42:20-43:1, 43:16-44:4.)

For every flight, Sands Aviation schedules two pilots. (Green Depo., Ex. A-7, at 100:23-101:3.) In flight, only one pilot serves as a PIC, and that individual bears increased responsibilities associated with the PIC role.[5] (Kennedy Depo., Ex. A-1, at 108:16-18; Snider Deposition ("Snider

---

[4] As relevant to Plaintiffs' duties, the governing regulations provide:

  (a)  The pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft.

  (b)  In an in-flight emergency requiring immediate action, the pilot in command may deviate from any rule of this part to the extent required to meet that emergency.

14 C.F.R. 91.3(a), (b).

[5] Plaintiffs sometimes refer to PIC as "Trip Captain" or "Captain" and they consider the terms synonymous. (Kennedy Deposition ("Kennedy Depo."), attached as Exhibit A-1 ("Ex. A-1"), at 184:11-14; Snider Depo., Ex. A-2, at 157:4-7; Ward Depo., Ex. A-3, at 106:17-22; Weston Depo.,

Depo."), attached as Exhibit A-2 ("Ex. A-2"), at 135:22-136:11; Ward Deposition ("Ward Depo."), attached as Exhibit A-3 ("Ex. A-3"), at 107:10-13; Weston Deposition ("Weston Depo."), attached as Exhibit A-4 ("Ex. A-4"), at 173:23-174:7; Williamson Deposition ("Williamson Depo."), attached as Exhibit A-5 ("Ex. A-5"), at 108:6-10, 135:11-136:7.) In addition to the two pilots, each flight generally includes one to seven flight attendants.[6] (Green Depo., Ex. A-7, at 104:7-10.)

### B. Sands Aviation's Expectations of its PICs

#### 1. Plaintiffs Were the Ultimate Authority on Each Flight They Piloted

"In decisions involving safety of flight, the Pilot-In-Command has absolute authority and accountability for decisions to operate, delay, divert or cancel a flight, as circumstances dictate." (Mason Depo., Ex. A-6, at 36:18-37:3, Ex. 19 to Mason Depo., Ex. A-6, at P008112.) Furthermore, in emergency situations, Sands Aviation gives PICs full discretion to deviate from prescribed operating procedures and/or regulations. (*Id.*, at P008129.) Sands Aviation expects PICs to "determine that the flight can be conducted safely" and PICs are "the final authority as to the operation of the aircraft." (*Id.*) Specific tasks for which PICs are responsible on each flight include:

- Ensuring correct aircraft weight balances;
- Specifying alternative airports, as necessary, to account for weather conditions;
- Determining required fuel loads;
- Compiling and maintaining appropriate flight documentation;
- Determining pre-flight airworthiness;
- Performing pre-flight aircraft inspections and briefings;
- Reporting hazardous weather conditions;
- Rejecting takeoffs;
- Determining destination airport adequacy;

---

Ex. A-4, at 141:2-11, 175:19-22, 178:3-5, 178:20-179:1; Williamson Depo., Ex. A-5, at 154:24-155:12.)
[6] Plaintiffs piloted Gulfstreams and generally were assigned one flight attendant. (Green Depo., Ex. A-7, 104:7-19.)

4

- Conducting post-flight inspections and recording post-flight mechanical or other discrepancies; and
- Declaring and managing in-flight emergencies.

(Mason Depo., Ex. A-6, at 42:3-22; *see also* Ex. 19 to Mason Depo., Ex. A-6, at P008227, P008238-P008239, P008241, P008247, P008250, P008257, P008259, P008270-P008271, P008277, P008282, P008297-98, P008301-P008309.)

Plaintiffs understood, and acted in accordance with, PIC responsibilities. (Kennedy Depo., Ex. A-1, at 240:10-241:7; Snider Depo., Ex. A-2, at 67:14-68:1; Ward Depo., Ex. A-3, at 133:24-134:20, 146:12-22, 148:15-21; Weston Depo., Ex. A-4, at 174:8-175:5, 178:20-24; Williamson Depo., Ex A-5, at 125:19-126:5.) They readily concede, when working as PICs, they were ultimately responsible for the safe operation of each flight they piloted:

> Q: But as a pilot in command, you're ultimately responsible for the aircraft, the safe operation of the aircraft?
>
> A: Yes.

(Snider Depo., Ex. A-2, at 48:21-49:1, 118:18-23, 136:24-137:7; *see also* Kennedy Depo., Ex. A-1, at 151:15-22, 182:15-17, 197:1-6: "**Q**: Who is directly responsible for the safe operation of that aircraft while it's in the air? **A:** The PIC."; Ward Depo., Ex. A-3, at 108:25-109:2, 148:22-149:17; Weston Depo., Ex. A-4, at 140:25-141:1, 186:3-5; Williamson Depo., Ex. A-5, at 121:24-122:10, 134:22-135:2, 136:21-24.) Moreover, it is without dispute that Plaintiffs performed the tasks expected of them as a PIC, including:

- Preparing flight plans and route information (Kennedy Depo., Ex. A-1, at 111:8-19; Ward Depo., Ex. A-3, at 129:20-25; Williamson Depo., Ex. A-5, at 136:15-24);
- Determining airworthiness (Kennedy Depo., Ex. A-1, at 112:1-8; Ward Depo., Ex. A-3, at 141:9-23);
- Determining fueling requirements and alternative landing locations (Kennedy Depo., Ex. A-1, at 178:5-24; Ward Depo., Ex. A-3, at 136:18-137:4, and 137:19-138:1);
- Weight and weather planning (Kennedy Depo., Ex. A-1, at 178:5-24; Snider Depo., Ex. A-2, at 193:1-194:23);
- Handling pre-flight requirements (Kennedy Depo., Ex. A-1, at 184:17-186:6);

5

- Handling in-flight emergencies (Kennedy Depo., Ex. A-1, at 197:7-19; Snider Depo., Ex. A-2, at 205:24-206:10; Ward Depo., Ex. A-3, at 149:22-150:5);

- Determining/selecting alternative elevations (Kennedy Depo., Ex. A-1, at 201:10-13);

- Rejecting landings (Kennedy Depo., Ex. A-1, at 202:1-4);

- Ensuring flight log accuracy (Kennedy Depo., Ex. A-1, at 204:12-15);

- Preparing flight logs (Snider Depo., Ex. A-2, at 119:19-25, 180:12-16; Ward Depo., Ex. A-3, at 126:8-22; Weston Depo., Ex. A-4, at 172:23-174:7; Williamson Depo., Ex. A-5, at 109:19-110:18, 121:12-18);

- Handling system operations (Snider Depo., Ex. A-2, at 201:2-202:4);

- Preparing post-flight maintenance documentation (Snider Depo., Ex. A-2, at 216:23-217:4; Ward Depo., Ex. A-3, at 142:18-143:4);

- Incident reporting (Ward Depo., Ex. A-3, at 133:16-22);

- Preparing trip envelopes (Ward Depo., Ex. A-3, at 138:2-16);

- Preparing flight paperwork (Williamson Depo., Ex. A-5, at 122:18-21);

- Performing instrument checks (Williamson Depo., Ex. A-5, at 145:23-25); and

- Acting as operating pilot (Williamson Depo., Ex. A-5, at 150:12-16).

These PIC duties effectively translate into operational control of the aircraft, which includes "anything pertaining to the preflight, flight planning, fuel planning, route planning, coordination with other crew members, coordination with passengers, coordination with the company, the actual flight itself, and then post-flight activities for securing the aircraft." (Ward Depo., Ex. A-3, at 149:7-17.) In fact, the PIC's authority and discretion over their flights included the ability to reject an aircraft. (Snider Depo., Ex. A-2, at 188:13-189:24.)

### 2. Plaintiffs' Authority over Flight Crew

Inherent in Plaintiffs' flight safety responsibilities was management and coordination of flight crews. (Gillcrist Deposition ("Gillcrist Depo."), attached as Exhibit A-8 ("Ex. A-8"), at 50:18-51:8, 149:8-21, 160:16-25; Saccoliti Deposition ("Saccoliti Depo."), attached as Exhibit A-9 ("Ex. A-9"), at 42:20-43:7.) When coordinating their flights, Plaintiffs' discretion included the ability to delegate discrete tasks while simultaneously retaining ultimate responsibility for ensuring completion of all required tasks. (Kennedy Depo., Ex. A-1, at 111:8-112:8, 184:17-185:6; Snider

6

Depo., Ex. A-2, at 119:19-25, 180:12-16, 217:1-10; Ward Depo., Ex. A-3, at 126:6-22, 127:9-13; Weston Depo., Ex. A-4, at 172:23-173:2; Williamson Depo., Ex. A-5, at 109:19-110:18, 121:12-18, 122:18-21.) As PICs, Plaintiffs also considered input from their Second-in-Command ("SICs"), but they had discretion to disregard the SICs' recommendations. (Kennedy Depo., Ex. A-1, at 238:8-13; Snider Depo., Ex. A-2, at 68:17-20, 137:8-24, 139:23-140:9, 153:3-7.) On the other hand, a SIC could not override the PIC's decisions. (Snider Depo., Ex. A-2, at 148:10-17, 153:3-7.) Furthermore, when working as PICs, Plaintiffs could disregard Sands Aviation's mid-flight instructions:

> Q: You communicate to the pilot-in-command that the destination has changed mid flight, correct?
>
> A: So I'm calling them while they're flying?
>
> Q: Right.
>
> A: Okay.
>
> Q: Does that pilot-in-command have authority to disregard your instruction?
>
> A: Absolutely.
>
> Q: On what basis?
>
> A: He's in charge of that aircraft.

(Green Depo., Ex. A-7, at 110:14-18.)

**C.  Plaintiffs' Employment with Sands Aviation**

**1.  Sean Kennedy**

On March 20, 2008, Kennedy began employment with Sands Aviation as a pilot; at that time, he was paid $500 for each scheduled workday. (Kennedy Depo., Ex. A-1, at 100:14-102:13, 105:8-13.) Effective March 27, 2008, he became a full-time employee earning an annual salary of $70,000.[7] (Kennedy Depo., Ex. A-1, at 103:18-105:13, 106:2-107:8.) On October 10, 2011, Kennedy was promoted to a PIC and received an annual salary increase to $125,000. (Kennedy Depo., Ex. A-1, at 117:4-118:17.) April 20, 2017 was Kennedy's last day of employment with Sands Aviation. (Kennedy Depo., Ex. A-1, at 139:7-9.) For the majority of flights he piloted between 2014 and 2017,

---

[7] At the time, Kennedy was not rated as a PIC and served as a SIC pilot. (Kennedy Depo., Ex. A-1, at 106:2-107:8.)

7

Kennedy worked as a PIC. (Kennedy Depo., Ex. A-1, at 166:19-167:24.) When his employment terminated, Kennedy's annual salary was approximately $142,151.10. (*See* Ex. A, ¶13, Ex. A-10 at DEF0000499; *see also* Ex. B, ¶4, and Ex. B-1.)

### 2. Andrew Snider

On December 20, 2011, Snider began working with Sands Aviation as a pilot and was paid $500 for each of his scheduled workdays. (Snider Depo., Ex. A-2, at 121:6-21, 124:1-125:3.) Effective February 10, 2014, he became a full-time employee earning an annual salary of $80,000.[8] (Snider Depo., Ex. A-2, at 143:2-20, 147:15-148:9.) On March 20, 2014, Snider was promoted to a PIC and received an annual salary increase to $125,000. (Snider Depo., Ex. A-2, at 162:20-163:10.) Effective September 2, 2016, Snider resigned. (Snider Depo., Ex. A-2, at 168:11-16.) For the majority of his flights between January 1, 2014 and his resignation, Snider served as a PIC. (Snider Depo., Ex A-2, at 176:16-24.) At the time his employment separated, Snider's annual salary was approximately $130,049.92. (Ex. O to Snider Depo., Ex. A-2, at DEF0000544-DEF0000545.)

### 3. Christopher Ward

On April 11, 2011, Ward began employment with Sands Aviation as a pilot and was paid $500 for each scheduled workday. (Ward Depo., Ex. A-3, at 97:19-99:25.) Effective February 13, 2012, he became a full-time employee earning an annual salary of $70,000.[9] (Ward Depo., Ex. A-3, at 101:16-102:12, 103:9-11.) On April 20, 2013, Ward was promoted to a PIC and received an annual salary increase to $125,000. (Ward Depo., Ex. A-3, at 106:6-107:10.) For the majority of the flights he piloted from January 1, 2014, until his resignation on July 4, 2017, Ward worked as a PIC. (Ward Depo., Ex. A-3, at 124:6-21.) When Ward's employment terminated, his annual salary was approximately $145,000. (Ward Depo., Ex. A-3, at 73:11-16.)

### 4. Randall Weston

On January 20, 2012, Weston began working with Sands Aviation as a pilot and was paid $750 for each scheduled workday. (Weston Depo., Ex. A-4, at 108:2-6, 127:24-25, 133:15-135:17.)

---

[8] At the time, Snider was not rated as a PIC and served as a SIC. (Snider Depo., Ex. A-2, at 147:15-148:17.)

[9] At the time, Ward was not rated as a PIC and served as a SIC. (Ward Depo., Ex. A-3, at 103:5-15.)

8

1  Effective February 10, 2014, he became a full-time employee earning a $150,000 annual salary, and
2  he earned at least that much thereafter.[10] (Weston Depo., Ex. A-4, at 143:23-144:15, 145:1-13.)
3  Weston's employment with Sands Aviation terminated in July of 2017. (Weston Depo., Ex. A-4, at
4  50:8-12.) For the majority of flights he piloted during his last three years of employment, Weston
5  was a PIC. (Weston Depo., Ex A-4, at 140:11-16, 173:8-14.) At the time of his termination, Weston's
6  annual salary was approximately $159,181.10. (*See* Ex. A, ¶13, Ex. A-10 at DEF0000741; *see also*
7  Ex. B, ¶5, and Ex. B-2.)

### 5. Ronald Williamson

In March 2011, Williamson began his employment with Sands Aviation as a pilot and was paid a day rate for each scheduled workday. (Williamson Depo., Ex. A-5, at 57:6-58:12.) In June of 2011, he became a full-time employee earning a $125,000 annual salary and each subsequent year, his salary increased.[11] (Williamson Depo., Ex. A-5, at 58:13-19, 59:8-20, 60:6-13.) From January 1, 2014, until his separation in April of 2017, on the majority of flights he piloted, Williamson served as a PIC. (Williamson Depo., Ex. A-5, at 107:17-25.) At the time of his termination, Williamson's annual salary was approximately $142,151.10. (*See* Ex. A, ¶13, Ex. A-10 at DEF0000674; *see also* Ex. B, ¶6, and Ex. B-3.)

## III. **LEGAL ARGUMENT**

### A. **Standard for Summary Judgment**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute about material facts. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *In re Slatkin,* 525 F.3d 805, 810 (9th Cir. 2008) (*citing* Fed. R. Civ. P. 56(c)).

. . .

---

[10] At the time, Weston was qualified to fly as a PIC. (Weston Depo., Ex. A-4, at 136:13-18.)

[11] At the time, Williamson was qualified to fly as a PIC. (Williamson Depo., Ex. A-5, at 59:15-60:13.)

9

A moving party bears the burden of informing the court about the basis for its motion, as well as demonstrating the absence of genuine issues about material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a moving party has met its burden, a party opposing a motion may not rest on mere allegations or denials, but must set forth specific facts showing there is a genuine issue requiring trial. *Anderson*, 477 U.S. at 248. For purposes of summary judgment, mere allegations and speculation do not create disputed facts. *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

### B.  FLSA Exemptions Must Not be Narrowly Construed

The FLSA requires employers to pay employees one and one-half times their regular rate of pay for time worked beyond 40 hours in a workweek. 29 U.S.C. § 207(a)(1). However, the FLSA exempts a variety of employees from its overtime pay obligations. *See* 29 U.S.C. § 213(b). The U.S. Supreme Court recently emphasized these exemptions "are as much a part of the FLSA's purpose as the overtime-pay requirement." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). "We thus have no license to give the exemption anything but a fair [rather than narrow] reading." *Id.* In so holding, the Supreme Court expressly rejected the principle that courts should narrowly construe FLSA exemptions. *Id.* ("[We] reject this [narrow construction] principle as a useful guidepost for interpreting the FLSA.").

Because FLSA overtime exemptions have equal footing with FLSA overtime pay obligations, consideration of the highly-compensated employee exemption must be given its full breadth, and is not subject to narrow construction. *Id.* Thus, entitlement to overtime pay does not authorize interpretive priority over this express statutory focus. *Id.*

### C.  Plaintiffs are Not Entitled to Overtime Under the Highly-Compensated Employee Exemption

A "high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." 29 C.F.R § 541.601(c). Consequently, "[an] employee with total annual compensation of at least $100,000 is deemed exempt under section 13(a)(1) of the [FLSA] if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional

10

employee… ." *McCoy v. North Slope Borough*, 2013 WL 4510780, at *8 (D. Alaska, Aug. 26, 2013), *citing,* 29 C.F.R. §541.601(a).[12] This highly-compensated employee overtime pay exemption only applies to employees whose primary duty includes performing office or non-manual work. *Id., citing* 29 C.F.R. § 541.601(d).

### 1.   Flying Aircraft is Not Manual Work

Unlike blue-collar occupations identified as manual labor in the FLSA's regulations, flying aircraft is highly technical and requires extensive and specialized training. *McCoy,* 2013 WL 4510780 at *10; *see also* 29 C.F.R § 541.601(d). Consequently, "flying an airplane is not manual labor." *McCoy*, 2013 WL 4510780 at *10. Instead, "it is the non-manual decision-making that is the key to the successful operation of an airplane." *Id.*

Plaintiffs were skilled PICs. They not only received extensive and specialized training, but had final authority over aircraft operation. There is no dispute the highly-compensated employee exemption may be applied to pilots as flying aircraft is not manual work. *McCoy,* 4510780 at *11 (pilots appropriately classified as exempt highly-compensated employees).

### 2.   Plaintiffs Earned Well Over $100,000

It is undisputed that, after January 1, 2014,[13] Plaintiffs earned significantly more than the $100,000 threshold required by the highly-compensated employee exemption. *See* 29 C.F.R. §541.601(a). (Kennedy Depo., Ex. A-1, at 117:4-21, 121:20-25; Snider Depo., Ex. A-2, at 162:20-163:10, 166:10-167:17; Ward Depo., Ex. A-3, at 50:4-15, 71:2-4, 74:3-5, 104:24-105:2, 107:3-10, 110:15-111:22; Weston Depo., Ex. A-4, at 145:1-9; Williamson Depo., Ex. A-5, at 58:13-19, 59:8-

---

[12] The Obama Administration sought to revise salary regulations under the FLSA, but that effort was ultimately blocked in late 2016. *See State of Nev. v. U.S. Dept. of Labor*, 218 F. Supp. 3d 520 (E.D. Texas 2016). The Department of Labor is undertaking rulemaking to revise regulations governing the executive, administrative and professional exemptions in 29 C.F.R. part 541. Until those final rules are determined, part 541 of the regulations, including that of the Highly-Compensated exemption, are being enforced as in effect on November 30, 2016. *See* DOL Fact Sheet #17H: Highly-Compensated Workers and the Part 541 Exemptions under the Fair Labor Standards Act.

[13] On March 27, 2017, Plaintiffs filed their initial Complaint in this matter wherein they alleged unpaid overtime under the FLSA. (ECF No. 1.) The statute of limitations for FLSA violations is two years, unless violations are willful, in which case the statute of limitations is extended to three years. 29 U.S.C. § 255(a). Thus, any claim arising before March 27, 2014 is untimely. For purposes of determining annual salary during the potentially actionable period beginning March 27, 2014, Defendants refer to Plaintiffs' 2014 annual salary.

20.) Consequently, a "detailed analysis" of Plaintiffs' job duties is unnecessary. *See* 29 C.F.R § 541.601(c). However, because PICs had ultimate responsibility for flight and passenger safety, they performed at least one exempt duty as required by the exemption.

### 3. Plaintiffs Regularly and Customarily Performed at Least One Administrative Exemption Duty

"Customarily and regularly" means a frequency that must be greater than occasional, but may be less than constant, and includes work normally and recurrently performed every workweek; isolated or one-time tasks are not included. *See* 29 C.F.R. § 541.700. Plaintiffs admit, since January 1, 2014, they spent a majority of their flying time as a PIC. (Kennedy Depo., Ex. A-1, at 166:19-167:24; Snider Depo., Ex. A-2, at 176:16-24; Ward Depo., Ex. A-3, at 124:6-21; Weston Depo., Ex. A-4, at 140:11-16, 173:8-14; Williamson Depo., Ex A-5, at 107:17-25.) Thus, they customarily and regularly performed PIC responsibilities, which included the exercise of discretion and independent judgment with respect to matters of significance. *See* 29 C.F.R. § 541.200(2), (3).

#### a. *Plaintiffs Exercised Discretion and Independent Judgment with Respect to Matters of Significance*

The "exercise of discretion and independent judgment" implies that employees have authority to make independent choices, free from immediate direction or supervision, involving the comparison and evaluation of various possibilities. 29 C.F.R. § 541.202(a). The term "matters of significance" refers to the level of importance or the consequence of the work performed. *Id.* Whether employees carry out major assignments when conducting business operations, perform work affecting business operations to a substantial degree, or have authority to waive or deviate from established policies and procedures without prior approval, are indicative of exercising discretion and independent judgment. *See Boyd v. Bank of Am. Corp.*, 109 F. Supp. 3d 1273, 1293 (9th Cir. 2015) (identifying factors courts consider when determining if an employee exercises discretion and independent judgment with respect to matters of significance), *citing* 29 C.F.R. § 541.202(b).

Inarguably, Plaintiffs were in charge of the flights they piloted. (Kennedy Depo., Ex. A-1, at 184:11-14; Snider Depo., Ex. A-2, at 157:4-7; Ward Depo., Ex. A-3, at 106:17-22; Weston Depo., Ex. A-4, at 141:2-11, 175:19-22, 178:3-5, 178:20-179:1; Williamson Depo., Ex. A-5, at 154:24-

155:12.) Each Plaintiff bore ultimate responsibility for ensuring flight safety—the very business Sands Aviation conducts. (Kennedy Depo., Ex. A-1, at 151:15-22, 182:15-17, 197:1-6; Snider Depo., Ex. A-2, at 48:21-49:1, 117:11-118:23, 136:24-137:7; Ward Depo., Ex. A-3, at 108:25-109:2, 148:21-149:17; Weston Depo., Ex. A-4, at 186:3-5; Williamson Depo., Ex. A-5, at 121:24-122:10, 134:22-135:2, 136:21-24.) From wheels up to wheels down, Plaintiffs not only *could* deviate from established policies and procedures without prior approval, they were *obligated* to do so in any situation compromising flight safety. (Ex. 19 to Mason Depo., Ex. A-6, at P008112, P008269.) They were the ultimate authority for aircraft operation and they orchestrated their crews' collaborative efforts. (Kennedy Depo., Ex. A-1, at 111:8-19, 112:1-8, 178:5-180:11, 184:17-186:6, 197:7-19, 201:10-13, 202:1-4, 204:12-15; Snider Depo., Ex. A-2, at 119:19-25, 180:12-16, 193:1-194:23, 201:24-202:4, 205:24-206:10, 216:23-25, 217:1-4; Ward Depo., Ex. A-3, at 126:8-22, 136:18-137:4, 137:19-138:1, 141:9-23, 142:18-143:4, 149:22-150:5, 129:20-25, 133:16-22; Weston Depo., Ex. A-4, at 172:23-174:7; Williamson Depo., Ex. A-5, at 109:19-110:18, 121:12-18, 122:18-21, 136:15-24, 145:23-25, 150:12-16). Moreover, the degree of discretion and independent judgment they exercised is evident from the manner in which they delegated, or retained, certain required tasks. (Kennedy Depo., Ex. A-1, at 111:8-19, 112:1-8, 178:5-180:11, 184:17-186:6, 197:7-19, 201:10-13, 202:1-4, 204:12-15; Snider Depo., Ex. A-2, 119:19-25, 180:12-16, 193:1-194:23, 201:24-202:4, 205:24-206:10, 216:23-25, 217:1-4; Ward Depo., Ex. A-3, at 126:8-22, 136:18-137:4, 137:19-138:1, 141:9-23, 142:18-143:4, 149:22-150:5, 129:20-25, 133:16-22; Weston Depo., Ex. A-4, at 172:23-174:7; Williamson Depo., Ex. A-5, at 109:19-110:18, 121:12-18, 122:18-21, 136:15-24, 145:23-25, 150:12-16). That Plaintiffs communicated with Sands Aviation, and/or air traffic control, while in flight does not diminish the discretion and independent judgment they retained. (Green Depo., Ex. A-7, at 110:14-18.)

In *McCoy* the court determined that pilots who flew for a search and rescue organization were appropriately classified as highly-compensated employees who were exempt from the FLSA's overtime obligations. *McCoy*, 2013 WL 4510780, at *11. The *McCoy* court did not focus on the search and rescue nature of the flights piloted; instead, the court correctly considered the nature and extent of the pilots' responsibilities.

Like Plaintiffs, the primary duty of the pilots in *McCoy* was "the safe operation of the [SAR] aircraft." *Id.* (Kennedy Depo., Ex. A-1, at 151:15-22, 182:15-17, 197:1-6; Snider Depo., Ex. A-2, at 48:21-49:1, 117:11-118:23, 136:24-137:7; Ward Depo., Ex. A-3, at 108:25-109:2, 133:24-134:16, 148:21-149:17; Weston Depo., Ex. A-4, 186:3-5; Williamson Depo., Ex. A-5, at 121:24-122:10, 134:22-135:2, 136:21-24; Ex. 19 to Mason Depo., Ex. A-6, at P008112.) Furthermore, the decisions Plaintiffs made, or did not make, to ensure the safe passage of the flight, airworthiness of each aircraft, flight modifications to account for particular weather circumstances, among others, have been expressly recognized as demonstrating an exercise of discretion and independent judgment justifying the application of an overtime exemption. *See Paul v. Petroleum Equipment Tools Co.*, 708 F.2d 168, 170-171 (5th Cir. 1983), *superseded by statute on other grounds; Moody v. Royal Wolf Lodge*, 339 P.3d 636,637 (Alaska 2014) (pilot who made final decision on whether to fly, airworthiness of plane, alterations for weather, and could, at any moment airborne, have to make an instant judgment "are not 'purely mechanical and routine' but involve considerable discretion and judgment" and thus evidence the exercise of discretion and judgment).

Moreover, the *McCoy* court recognized that maintaining highly-technical flight operation manuals did not abrogate a pilots' discretion and independent judgment when executing their flight safety duties. *McCoy*, 2013 WL 4510780, at *11. In emergency situations, Plaintiffs would not "consult a manual and simply apply 'closely prescribed limits' and 'well-established techniques' to determine the correct course of action." *Id.* The General Operations Manual and governing regulations demonstrate a converse approach to problem-solving—"one that involves the pilot's careful exercise of independent judgment." *See Id.* Specifically, when making "decisions involving safety of flight, the Pilot-In-Command has absolute authority and accountability for decisions to operate, delay, divert or cancel a flight, as circumstances dictate" and, when confronted with an "in-flight emergency requiring immediate action, the pilot in command may deviate from any rule of this part to the extent required to meet that emergency." (Ex. 19 to Mason Depo., Ex. A-6, at P008112; 14 C.F.R. 91.3(b).)

The very nature of flying implicates serious safety concerns requiring important decisions by the PIC. Piloting flights with passengers, and avoiding disaster or emergencies, is no less a matter of

significance than piloting an aircraft to search and rescue those involved in emergencies. *See McCoy*, 2013 WL 4510780 at *11 ("flying an airplane [to rescue or search for individuals] is clearly a 'matter of significance'"). Accordingly, as a matter of law, Plaintiffs were appropriately classified as highly-compensated, exempt employees and their FLSA claim therefore fails.

### b.  Plaintiffs' Primary Duty Was the Performance of Non-Manual Work Directly Related to the General Business Operations of Sands Aviation

PIC responsibilities may also be appropriately categorized as satisfying another administrative exemption duty. Specifically, Plaintiffs' primary duty constituted performance of non-manual work directly related to Sands Aviation's general business operations. *See* 29 C.F.R. § 541.200(2). Flying aircraft is not manual labor. *McCoy,* 2013 WL 4510780, at *10. Moreover, the very purpose of Sands Aviation's general business operations is to provide private, and safe, air transportation. Because PICs are vested with unmitigated authority over each flight—*i.e.*, Sands Aviation's business operation—they are unlike the search and rescue pilots in *McCoy* who did not satisfy this primary duty requirement because they were not directing the specific search and rescue operation. *Id.* In other words, Plaintiffs were not just carrying out one aspect of Sands Aviation's operations; they were actually operating the business itself, thus satisfying another administrative exemption duty.

### 4.  Plaintiffs Regularly and Customarily Performed at Least One Executive Exemption Duty

The executive exemption, in relevant part, applies to employees who (1) have management as his or her primary duty, and (2) customarily and regularly direct the work of at least two other employees. *See* 29 C.F.R. § 541.100 (2), (3). "Management" duties include, but are not limited to: "… directing the work of employees; . . . planning the work; determining the techniques to be used . . . apportioning the work among the employees . . . providing for the safety and security of the employees or the property . . ." 29 C.F.R. § 541.102. Plaintiffs performed both of these duties.

As PICs, from wheels up to wheels down, Plaintiffs had the ultimate decision-making authority. They managed all activities performed by their crews, which ordinarily were comprised of two to eight others (*i.e.*, a SIC, and one to seven flight attendants). (Green Depo., Ex. A-7, at

15

100:23-101:3, 104:7-10.) As a matter of law, Plaintiffs are exempt from overtime pay as highly-compensated, executive employees. Accordingly, their overtime claim fails.

### 5. Alternatively, Plaintiffs Were Also Exempt Based on a Combination of Their Administrative and Executive Duties

Even if Plaintiffs' duties somehow did not fall squarely within the administrative or executive exemptions (which Defendants deny), they were still properly classified as exempt under the FLSA's combination exemption:

> Employees who perform a combination of exempt duties as set forth in the regulations in this part for executive [and] administrative employees may qualify for exemption. Thus, for example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption. In other words, work that is exempt under one section of this part will not defeat the exemption under any other section.

29 C.F.R. § 541.708. "[T]his exemption is intended to address 'the situation that exists when an employee does not meet the primary-duty requirement of any individual exemption.' It is 'a mechanism for cobbling together different exempt duties for purposes of meeting the primary-duty test.'" *King v. Stevenson Beer Distrib. Co.*, 11 F. Supp. 3d 772, 786 (S.D. Texas 2014) (*quoting IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 294 (4th Cir. 2007)); *see also Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 638 (S.D.N.Y. 2013) ("[E]mployees whose primary duty involves a combination of exempt administrative and exempt executive work may qualify as exempt workers, despite the fact that their duties fit neatly within neither the executive nor the administrative exemption.") (internal citation omitted).

Even if Plaintiffs did not qualify under the highly-compensated exemption of the FLSA (and they did), they still fall under the combination exemption. Plaintiffs' work as PICs included administrative and executive exemption duties. *Supra, passim*. All of their job duties (1) were directly related to the management of Sands Aviation's business operations, (2) involved directing others' work, and (3) required the exercise of discretion and independent judgment with respect to matters of significance. When combined, Plaintiffs' duties also justify application of the combination exemption.

16

## IV. CONCLUSION

Plaintiffs, who were highly-compensated pilots responsible for Sands Aviation's business operations, were exempt from overtime under the FLSA. Their duties, as well as their compensation, implicated both the highly-compensated and combination exemptions regarding the FLSA's overtime pay requirements. For these reasons, summary judgment in Defendants' favor is warranted.

DATED this 25th day of February, 2019.

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

/s/ *Dana B. Salmonson*
Anthony L. Martin
Nevada Bar No. 8177
Dana B. Salmonson
Nevada Bar No. 11180
Wells Fargo Tower
Suite 1500
3800 Howard Hughes Parkway
Las Vegas, NV 89169
*Attorneys for Defendants*
*Sands Aviation, LLC and Las Vegas Sands Corp.*

17

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically transmitted the attached **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFFS' EXEMPT STATUS** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

>Andre M. Lagomarsino
>Justine A. Harrison

Pursuant to FRCP 5(b), I hereby further certify that service of the foregoing document was also made by depositing a true and correct copy of same for mailing, first class mail, postage prepaid thereon, at Las Vegas, Nevada, to the following:

Andre M. Lagomarsino
Lagomarsino Law
3005 W. Horizon Ridge Parkway
Suite 241
Henderson, NV  89052

Justine A. Harrison
Justine A. Harrison, Chtd.
848 N. Rainbow Blvd., #1540
Las Vegas, NV  89107
*Attorneys for Plaintiffs*

DATED this 25th day of February, 2019.

/s/ Brittany Manning
AN EMPLOYEE OF OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

37539536.1