Anthony L. Martin
Nevada Bar No. 8177
anthony.martin@ogletreedeakins.com
Dana B. Salmonson
Nevada Bar No. 11180
dana.salmonson@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Wells Fargo Tower
Suite 1500
3800 Howard Hughes Parkway
Las Vegas, NV  89169
Telephone:  702.369.6800
Fax:  702.369.6888

*Attorneys for Defendants*
*Sands Aviation, LLC and Las Vegas Sands Corp.*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| SEAN KENNEDY, individual; ANDREW SNIDER, individual; CHRISTOPHER WARD, individual; RANDALL WESTON, individual; RONALD WILLIAMSON, individual,<br><br>Plaintiffs,<br><br>vs.<br><br>LAS VEGAS SAND CORP., a Domestic Corporation; and SANDS AVIATION, LLC, a Domestic Limited-Liability Company,<br><br>Defendants. | Case No.:  2:17-cv-00880-JCM-VCF<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING JOINT EMPLOYMENT** |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule of Civil Procedure 56-1, Defendants Sands Aviation, LLC ("Sands Aviation") and Las Vegas Sands Corp. ("LVSC") (collectively, "Defendants") move this Court for summary judgment in their favor regarding claims made in Plaintiffs' First Amended Complaint ("FAC") as Defendants were not joint employers of Plaintiffs.

. . .

. . .

This Motion is supported by the following Memorandum of Points and Authorities, the Declaration of Dana B Salmonson and exhibits thereto, attached hereto as **Exhibit A**[1], the pleadings and papers on file, and any further argument the Court may deem appropriate.

DATED this 25th day of February, 2019.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*/s/ Dana B. Salmonson*
Anthony L. Martin
Nevada Bar No. 8177
Dana B. Salmonson
Nevada Bar No. 11180
Wells Fargo Tower
Suite 1500
3800 Howard Hughes Parkway
Las Vegas, NV  89169
*Attorneys for Defendants*
*Sands Aviation, LLC and Las Vegas Sands Corp.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Plaintiffs in this action were employed by Sands Aviation, not LVSC. Sands Aviation is a wholly-owned subsidiary of LVSC, but that fact does not mean the two entities were joint employers of Plaintiffs under the Fair Labor Standards Act ("FLSA"). There is no question of material fact that Sands Aviation had the day-to-day control over Plaintiffs' employment, including decisions about recruitment, hiring, firing, rates of pay, and discipline. LVSC performed none of those responsibilities and, thus, was not Plaintiffs' employer under the FLSA. Sands Aviation controlled *all* aspects of Plaintiffs' employment, and consequently, there was no joint employment with LVSC, and summary judgment should be granted in Defendants' favor.[2]

---

[1] **Exhibit A** authenticates the following depositions and exhibits authenticated at those depositions: Thomas Mason ("Mason"); Paul Gillcrist ("Gillcrist"); Andrew Snider ("Snider"); Christopher Ward ("Ward"); Randall Weston ("Weston"); Ronald Williamson ("Williamson"); Sean Kennedy ("Kennedy"); Jennifer Green ("Green"); Jeff Saccoliti ("Saccoliti"); FRCP 30(b)(6) Representative Megan Rodgers ("Rodgers") for LVSC; and FRCP 30(b)(6) Representatives Robert Welsh ("Welsh"), Thomas Mason, Jeff Saccoliti, and Jennifer Green for Sands Aviation.

[2] Defendants are separately moving for summary judgment regarding the merits of Plaintiffs' claims; summary judgment in Defendants' favor regarding the merits would moot the present Motion.

2

## II. STATEMENT OF UNDISPUTED FACTS[3]

### A. Sands Aviation Controlled Plaintiffs' Employment, Including Hiring, Firing, and Scheduling Day-to-Day Operations

Sands Aviation is a sophisticated, private aviation operation that safely and efficiently transports personnel and guests of its related entities, including LVSC. (Mason Deposition, ("Mason Depo."), attached hereto as Exhibit A-1 ("Ex. A-1") at 36:18-37:3, Ex. 19 to Mason Depo., Ex. A-1, at P008127.) Gillcrist is the Managing Director of Sands Aviation; he directs "all components of the flight department for Sands Aviation, LLC," including its budget and performance. (Gillcrist Deposition ("Gillcrist Depo."), attached hereto as Exhibit A-2 ("Ex. A-2"), at 14:17-19, 27:7-8, 68:8-13). Sands Aviation has its own controller who is responsible for paying its bills, reporting financials, and preparing budgets. (Welsh 30(b)(6) Deposition ("Welsh 30(b)(6) Depo."), attached hereto as Exhibit A-3 ("Ex. A-3"), at 13:25-14:4.)

#### 1. Sands Aviation Made All Decisions Regarding Plaintiffs' Employment Including Hiring, Discipline, and Termination

Sands Aviation recruits and hires its own pilots and recruited and hired each Plaintiff. (Mason 30(b)(6) Deposition ("Mason 30(b)(6) Depo."), attached hereto as Exhibit A-4 ("Ex. A-4"), at 11:3-14; Snider Deposition ("Snider Depo."), attached hereto as Exhibit A-5 ("Ex. A-5"), at 120:17-23.) Pilot hiring decisions are made collaboratively among management-level employees at Sands Aviation: Chief Pilot Saccoliti, Executive Director of Flight Operations Mason and Managing Director and Senior Vice President Gillcrist. (Mason 30(b)(6) Depo., Ex. A-4, at 12:22-13:1.)

Snider testified he had an impromptu interview during a hangar tour with then-Sands Aviation Chief Pilot, Christopher Hilsabeck ("Hilsabeck"). (Snider Depo., Ex. A-5, at 121:22-122:3, 122:17-123:4.) Ward stated he initially had conversations with Mason to the effect that he could "try it and see how [he] liked it." (Ward Deposition ("Ward Depo."), attached hereto as Exhibit A-6 ("Ex. A-6"), at 88:2-12.) Weston's first interview was with Mason; his second interview was conducted by Hilsabeck. (Weston Deposition ("Weston Depo."), attached hereto as Exhibit A-7

---

[3] For details about Plaintiffs' Sands Aviation work history, *see* Defendants' Motion for Summary Judgment addressing Plaintiffs' exemption from the FLSA's overtime obligation. (ECF No. 144).

3

("Ex. A-7"), at 128:1-4.) Williamson testified Mason first approached him about flying for Sands Aviation. (Williamson Deposition ("Williamson Depo."), attached hereto as Exhibit A-8 ("Ex. A-8"), at 56:16-18.) Kennedy confirmed his discussions about hiring him as a pilot were with Sands Aviation employees, not LVSC employees—*i.e.* in April or May of 2007, Kennedy and Gillcrist discussed Sands Aviation hiring him as a pilot. (Kennedy Deposition ("Kennedy Depo."), attached hereto as Exhibit A-9 ("Ex. A-9"), at 74:4-9, 75:22-76:2.) In contrast, LVSC does not recruit or hire pilots. (Mason 30(b)(6) Depo., Ex. A-4, at 11:3-14.)

Moreover, Sands Aviation managed Plaintiffs' work performance. (Rodgers 30(b)(6) Deposition ("Rodgers 30(b)(6) Depo."), attached hereto as Exhibit A-10 ("Ex. A-10"), at 46:15-24 ("Q: Who enforces those policies with respect to Sands Aviation employees? A: Management is responsible for enforcing policies.")) "Written warnings are administered by [Sands Aviation] management." (Rodgers 30(b)(6) Depo., Ex. A-10, at 52:25-53:12.) For example, after refusing a flight, Weston acknowledged he was verbally reprimanded by Gillcrist. (Weston Depo., Ex. A-7, at 201:18-202:1.) Snider also admitted Saccoliti disciplined him because of his attitude. (Snider Depo., Ex. A-5, at 169:2-19.) Similarly, Saccoliti conducted performance reviews that were used to determine pilots' year-end bonuses. (Saccoliti 30(b)(6) Deposition ("Saccoliti 30(b)(6) Depo."), attached hereto as Exhibit A-11 ("Ex. A-11"), at 45:7-20.) Finally, Gillcrist makes the final decision to terminate a pilot when necessary. (Mason 30(b)(6) Depo., Ex. A-4, at 13:8-11 (Gillcrist "has the ultimate authority to fire pilots at Sands Aviation.")

**2.     Sands Aviation Paid Plaintiffs and Determined Their Rate of Pay**

Sands Aviation paid Plaintiffs' salaries. (Exhibit K to Kennedy Depo., Ex. A-9, at P017737, P017740, P017743, P017749; Exhibit GG to Snider Depo., Ex. A-5, at P017693, P017696, P017700; Ward Depo., Ex. A-6, at 116:17-22, Exhibit P to Ward Depo., Ex. A-6, at P017707, P017712, P017718, P017722; Weston Depo., Ex. A-7, at 155:11-25, Exhibit P to Weston Depo., Ex. A-7, at P001643, P017725, P017728, P017733, P017736; Williamson Depo., Ex. A-8, at 84:3-9, Exhibit J to Williamson Depo., Ex. A-8, at P017757, P017770.) Further, Sands Aviation's management, including its Chief Pilot, Executive Director of Flight Operations, and Managing Director, determined salaries for pilots, including Plaintiffs, based on their abilities, work backgrounds, and

4

qualifications. (Mason 30(b)(6) Depo., Ex. A-4, at 49:19-50:7.) These salary decisions were made when Sands Aviation's management hired each Plaintiff. (*Id*.) Similarly, Sands Aviation assigned when a pilot worked as a Second-in-Command (SIC) or as a Pilot-in-Command (PIC). (Green Deposition, ("Green Depo."), attached hereto as Exhibit A-12 ("Ex. A-12"), at 103:12-25.) Gillcrist also approved salary increases for each Plaintiff throughout their employment with Sands Aviation. (*See e.g.* Ex. A, ¶16, Email Chain, attached hereto as Exhibit A-13 ("Ex. A-13"), confirming that there "would never be a salary increase without [Gillcrist's] approval".)

### 3. Sands Aviation Made All Decisions Related to Plaintiffs' Flight Schedules and Days Off

Sands Aviation controlled the work schedules of Plaintiffs and approved their time off requests. (Green 30(b)(6) Deposition ("Green 30(b)(6) Depo."), attached hereto as Exhibit A-14 ("Ex. A-14"), at 14:14-16, 14:17-15:2; Saccoliti 30(b)(6) Depo., Ex. A-11, at 36:4-16, 36:17-37:22; Green Depo., Ex. A-12, at 94:20-95:4.) Dispatch Manager Green and the Scheduling Department for Sands Aviation scheduled every flight piloted by each Plaintiff. (Green 30(b)(6) Depo., Ex. A-14, at 14:14-16.) Flights are scheduled based on availability of crew, including whether an available pilot is trained and able to fly specific aircraft. (Green 30(b)(6) Depo., Ex. A-14, at 14:17-15:2.) When Sands Aviation assigned a flight to Plaintiffs, the Scheduling Department emailed the crew, line service, maintenance, upper management, and all schedulers. (Green Depo., Ex. A-12, at 52:10-15.)

When pilots made informal requests for time off, they discussed their requests with Sands Aviation's Scheduling Department. (Saccoliti 30(b)(6) Depo., Ex. A-11, at 36:4-16; Exs. AA, BB and DD to Snider Depo, Ex. A-5.) Sands Aviation's Scheduling Department also assigned days off to all pilots, including Plaintiffs, based on business needs. (Green 30(b)(6) Depo., Ex. A-14, at 27:19-28:3.) However, when pilots requested formal time off called "flex time", or sick time, they completed a form that requested specific dates and submitted the completed form to the Chief Pilot for approval. (Saccoliti 30(b)(6) Depo., Ex. A-11, at 36:17-37:22; Green Depo., Ex. A-12, at 94:20-95:4.) As part of the approval process, the Chief Pilot reviewed dates with Scheduling to determine if Sands Aviation could cover the requested time off and, if so, requests were granted. (Saccoliti 30(b)(6) Depo., Ex. A-11, at 36:19-37:3; Ward Depo., Ex. A-6, at 172:17-173:1.)

5

### B. LVSC is Not a Joint Employer Merely because it Shared Certain Administrative Services with Sands Aviation

Sands Aviation maintained day-to-day control over its employment relationship with Plaintiffs, and all pilots. (Mason 30(b)(6) Depo., Ex. A-4, at 11:16-18.) However, LVSC and Sands Aviation shared certain administrative services, such as legal and regulatory compliance. (Mason 30(b)(6) Depo., Ex. A-4, at 10:25-11:2.)

Although there is no written agreement defining all shared services between Sands Aviation and LVSC, (Rodgers 30(b)(6) Depo., Ex. A-10, 32:17-21, 92:20-93:8), LVSC's Human Resources Department provides Sands Aviation with certain support services, such as creating employee policies. (Rodgers 30(b)(6) Depo., Ex. A-10, at 21:21-22:5, 30:2-14; Mason 30(b)(6) Depo., Ex. A-4, at 10:21-24, 11:16-18.) However, Sands Aviation enforces all policies with its employees, which included Plaintiffs. (Rodgers 30(b)(6) Depo., Ex. A-10, at 46:15-19, 53:11-12.)

When Sands Aviation hires employees, LVSC's Human Resources Department processes personnel on-boarding, handles related administrative paperwork, and maintains records, such as personnel files. (Mason 30(b)(6) Depo., Ex. A-4, at 11:25-12:1; Rodgers 30(b)(6) Depo., Ex. A-10, at 53:14-16.) However, Sands Aviation maintains various operational records, such as documents for self-reporting to the Federal Aviation Administration ("FAA"). (Saccoliti Deposition ("Saccoliti Depo."), attached hereto as Exhibit A-15, ("Ex. A-15"), at 103:7-11.) Additionally, LVSC uses a third-party administrator, an entirely unrelated non-party—*i.e.*, ADP— to provide payroll services, including payroll services for Sands Aviation. (Rodgers 30(b)(6) Depo., Ex. A-10, at 44:16-18.)

### III. LEGAL ARGUMENT

#### A. Standard for Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over material facts. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

6

to judgment as a matter of law." *Id.* (citing FRCP 56(c)). "Whether a party is an employer for purposes of FLSA liability is a question of law, appropriate for resolution by the Court on motion for summary judgment." *Nissenbaum v. NNH Cal Neva Services Co.*, LLC, 983 F. Supp. 2d 1234, 1239 (D. Nev. 2013) (citing *Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997)).

The moving party bears the burden of informing the court of the basis for its motion and providing evidence demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the party opposing the motion may not rest on mere allegations, denials, and pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. For purposes of summary judgment, speculation does not create a factual dispute. *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). When there is a complete failure of proof concerning an essential element of a non-moving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### B. Sands Aviation and LVSC were not Plaintiffs' Joint Employers under the FLSA

To prevail under the FLSA, by a preponderance of the evidence, a "plaintiff must first establish the existence of an employer/employee relationship". *See Nissenbaum*, 983 F. Supp. 2d at 1250 (citing *Bonnette v. Cal. Health and Welfare Agency,* 704 F.2d 1465, 1468 (9th Cir. 1983), abrogated on other grounds by *Garcia v. San Antonia Metropolitan Transit Auth*., 469 U.S. 528, 539 (1985). According to the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d).

When determining if a joint employment relationship exists, courts apply an "economic reality" test. *Torres-Lopez*, 111 F.3d at 638. When evaluating the economic realities of the putative joint employers, courts generally consider the following factors: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payment, (3) determined the rate and method of payment, and (4) maintained employment records." *Moreau v. Air France*, 356 F.3d 942, 946-47 (9th Cir. 2004) (quoting *Bonnette,* 704 F.2d at 1470). "However, no single factor is dispositive—the Court may ultimately conclude that there was no joint employment even where some factors weigh in favor of finding joint

7

employment." *Nissenbaum*, 983 F. Supp. 2d at 1251 (citing *Zheng v. Liberty Apparel Co., Inc.* 355 F.3d 61, 76 (2nd Cir. 2003); *see also Chapman v. Fertitta Entertainment, Inc.*, 2017 WL 3813966 (D. Nev. 2017). "Ultimately, the determination is 'based upon the circumstances of the whole activity.'" *Id.* In fact, "[t]he Court may find no joint employment *even if* some factors weigh in favor of finding joint employment." *Valdex v. Cox Communications Las Vegas, Inc.,* 2012 WL 1203726, *2 (April 11, 2012) (*citing Zheng,* 355 F.3d at 76). (Emphasis added).

Here, the totality of the circumstances regarding "economic realities" demonstrate Sands Aviation and LVSC were not Plaintiffs' joint employers.

### 1. Sands Aviation Had Sole Authority to Hire and Fire its Pilots, Including Plaintiffs

Authority to hire and fire pilots, including Plaintiffs, inarguably rested with Sands Aviation, not LVSC. Sands Aviation's managers, Gillcrist, Mason and Saccoliti, recruited and hired Plaintiffs to work as pilots for Sands Aviation. (Mason 30(b)(6) Depo., Ex. A-4, at 12:22-13:1.) Plaintiffs conceded they were interviewed by managers of Sands Aviation and that discussions regarding their prospective and eventual employment as pilots were with those same managers at Sands Aviation. (Snider Depo., Ex. A-5, at 121:22-122:3, 122:17-123:4; Ward Depo., Ex. A-6, at 88:2-12; Weston Depo., Ex. A-7, at 128:1-4; Williamson Depo., Ex. A-8, at 56:16-18; Kennedy Depo., Ex. A-9, at 74:4-9, 75:22-76:2.) Likewise, Gillcrist, Mason, and Saccoliti made the determination of Plaintiffs' salary and position when they were hired, and Gillcrist would approve any salary increases. (Mason 30(b)(6) Depo., Ex. A-4, at 49:19-50:4; Ex. A, ¶16, Email Chain, Ex. A-13, confirming that there "would never be a salary increase without [Gillcrist's] approval.") Only Gillcrist, as Managing Director of Sands Aviation, had the ultimate authority to terminate a pilot. (Mason 30(b)(6) Depo., Ex. A-4, at 13:8-11.) In contrast, LVSC does not recruit nor hire employees for Sands Aviation, and did not recruit or hire Plaintiffs. (*Id*. at 11:3-14.) Consequently, sole authority over Plaintiffs' employment was vested in and exercised by Sands Aviation, not LVSC.

### 2. Sands Aviation Supervised and Controlled Plaintiffs' Work Schedules

Sands Aviation, not LVSC, scheduled Plaintiffs' work. (Green 30(b)(6) Depo., Ex. A-14, at 14:14-16, 14:17-15:2; Saccoliti 30(b)(6) Depo., Ex. A-11, at 36:4-37:22; Green Depo., Ex. A-12, at

8

1 94:20-95:4). The Scheduling Department at Sands Aviation scheduled all flights and assigned crew,
2 including Plaintiffs, for each aircraft. (Green Depo., Ex. A-12, at 70:4-9, 72:11-14.) Moreover,
3 Plaintiffs contacted other employees at Sands Aviation when seeking a modification to their work
4 schedules. For scheduling adjustments or informal time off, Plaintiffs contacted the Scheduling
5 Department at Sands Aviation. (Ex. DD to Snider Depo., Ex. A-5.) For formal time off, Plaintiffs
6 submitted a request to Chief Pilot Saccoliti who determined whether to approve the request after
7 conferring with other departments at Sands Aviation, such as the Scheduling Department, to evaluate
8 anticipated business needs for the requested time off. (Saccoliti 30(b)(6) Depo., Ex. A-11, at 36:17-
9 37:22.) There is no evidence showing that LVSC ever supervised or controlled the work schedules
10 of Plaintiffs in any way.

### 3. Sands Aviation Paid Plaintiffs and Determined the Method and Rate of Pay

13 Evidence shows that members of management at Sands Aviation determined the salary rates
14 for pilots, which included Plaintiffs. (Mason 30(b)(6) Depo., Ex. A-4, at 49:19-50:7.) For example,
15 upon hire, management at Sands Aviation, most often the Chief Pilot and Executive Director,
16 decided what position each Plaintiff would be placed into and the corresponding rate of pay each
17 Plaintiff would earn. (*Id.*) Thereafter, the Managing Director would approve any increases in salary.
18 (Ex. A, ¶16, Email Chain, Ex. A-13, confirming that there "would never be a salary increase without
19 [Gillcrist's] approval.") Moreover, Sands Aviation, not LVSC, paid Plaintiffs' salaries. (*See* Exhibit
20 K to Kennedy Depo., Ex. A-9, at P017737, P017740, P017743, P017749; Exhibit GG to Snider
21 Depo, Ex. A-5, at P017693, P017696, P017700; Ward Depo., Ex. A-6, at 116:17-22, Exhibit P to
22 Ward Depo., Ex. A-6, at P017707, P017712, P017718, P017722; Weston Depo., Ex. A-7, at 155:11-
23 25, Exhibit P to Weston Depo., Ex. A-7, at P001643, P017725, P017728, P017733, P017736;
24 Williamson Depo., Ex. A-8, at 84:3-9, Exhibit J to Williamson Depo., Ex. A-8, at P017757,
25 P017770.) Sands Aviation, and not LVSC, had sole control over the pay rates for Plaintiffs and paid
26 Plaintiffs' salaries.
27 . . .
28 . . .

9

**C. Shared Services Between Defendants does not Create a Joint Employer Relationship Under the FLSA**

LVSC and Sands Aviation were not joint employers of Plaintiffs simply because Defendants shared certain administrative services for legal, regulatory compliance, payroll processing and human resources. (Mason 30(b)(6) Depo., Ex. A-4, at 10:25-11:2, 11:16-18.; Rodgers 30(b)(6) Depo., Ex. A-10, at 21:21-22:5.) Sands Aviation maintained control over all work performed by Plaintiffs. Though LVSC may have supplied certain administrative resources to Sands Aviation, Sands Aviation was responsible for managing Sands Aviation's employees and all employment functions pertaining to Plaintiffs. For example, regarding discipline, managers at Sands Aviation made the assessment as to whether discipline was warranted and, if necessary, would issue a written disciplinary warning; however, LVSC would maintain the paperwork related to the written warning. (Rodgers 30(b)(6) Depo., Ex. A-10, at 52:25-53:16.) Simply put, all decision-making regarding Plaintiffs' employment was made by Sands Aviation. LVSC only provided the administrative services to support that decision-making.

That LVSC provides these limited services to Sands Aviation does not show that LVSC exercised any control over the day-to-day employment of Plaintiffs or that LVSC was Plaintiffs' joint employer. Instead, all evidence taken together shows, by a totality of the circumstances, that Plaintiffs had only one employer, Sands Aviation, and that there was no joint employment by LVSC. Thus, summary judgment is proper and warranted.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

10

## IV. CONCLUSION

The undisputed facts show Plaintiffs had only one employer—Sands Aviation. The facts do not show that the nature and extent of the relationship between Defendants support a conclusion that they jointly employed Plaintiffs. Therefore, LVSC was not the employer of Plaintiffs and summary judgment should be granted.

DATED this 25th day of February, 2019.

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*/s/ Dana B. Salmonson*
Anthony L. Martin
Nevada Bar No. 8177
Dana B. Salmonson
Nevada Bar No. 11180
Wells Fargo Tower
Suite 1500
3800 Howard Hughes Parkway
Las Vegas, NV  89169
*Attorneys for Defendants*
*Sands Aviation, LLC and Las Vegas Sands Corp.*

11

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically transmitted the attached **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING JOINT EMPLOYMENT** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Andre M. Lagomarsino
Justine A. Harrison

Pursuant to FRCP 5(b), I hereby further certify that service of the foregoing document was also made by depositing a true and correct copy of same for mailing, first class mail, postage prepaid thereon, at Las Vegas, Nevada, to the following:

Andre M. Lagomarsino
Lagomarsino Law
3005 W. Horizon Ridge Parkway
Suite 241
Henderson, NV  89052

Justine A. Harrison
Justine A. Harrison, Chtd.
848 N. Rainbow Blvd., #1540
Las Vegas, NV  89107
*Attorneys for Plaintiffs*

DATED this 25th day of February, 2019.

/s/ Brittany Manning
AN EMPLOYEE OF OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

37539957.1