1

2

3

4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

SEAN KENNEDY, et al.,

Case No. 2:17-CV-880 JCM (VCF)

8

Plaintiff(s),

ORDER

9

v.

10

LAS VEGAS SANDS CORP., et al.,

11

Defendant(s).

12

13    Presently before the court is defendants Las Vegas Sands Corp. ("Sands Corp.") and Sands

14  Aviation, LLC's ("Sands Aviation") (collectively "defendants") first motion *in limine*. (ECF No.

15  124). Plaintiffs Sean Kennedy, Andrew Snider, Christopher Ward, Randall Weston, and Ronald

16  Williamson (collectively "plaintiffs") filed a response (ECF No. 137), to which defendants replied

17  (ECF No. 138).

18    Also before the court is defendants' second motion *in limine*. (ECF No. 125). Plaintiffs

19  filed a response (ECF No. 136), to which defendants replied (ECF No. 139).

20    Also before the court is plaintiffs' motion for reconsideration. (ECF No. 127). Defendants

21  filed a response (ECF No. 132), to which plaintiffs replied (ECF No. 135).

22    Also before the court is defendants' first motion for summary judgment. (ECF No. 144).

23  Plaintiffs filed a response (ECF No. 156), to which defendants replied (ECF No. 175).

24    Also before the court is defendants' second motion for summary judgment. (ECF No. 145).

25  Plaintiffs filed a response (ECF No. 154), to which defendants replied (ECF No. 176).

26    Also before the court is defendants' third motion for summary judgment. (ECF No. 146).

27  Plaintiffs filed a response (ECF No. 159), to which defendants replied (ECF No. 177).

28

James C. Mahan
U.S. District Judge

## I.        Facts

Sands Corp. owns and operates several properties in Las Vegas including Sands Expo and Convention Center, the Venetian, and the Palazzo.  (ECF Nos. 55, 144-8).  Sands Aviation, which is a wholly owned subsidiary of Sands Corp., provides private aviation services for Sands Corp.'s personnel and guests.  (ECF No. 144-8).  Every flight that Sands Aviation provides includes two pilots: a pilot-in-command ("PIC") and a second-in-command ("SIC").  (ECF Nos. 144, 156).  Sands Aviation formerly employed plaintiffs as PICs.  *Id.*

Although Sands Aviation directly hired pilots, Sands Corp. was extensively involved in Sands Aviation's employment practices.  When Sands Aviation would hire new employees, it would first contact Sands Corp. to facilitate background checks, drug tests, and process administrative paperwork.  (ECF Nos. 155-1, 155-5).  Once employed, Sands Aviation required employees to abide by Sands Corp.'s policies.  (ECF Nos. 155-4, 155-5).  If an employee violated a policy, Sands Aviation would consult with Sands Corp. to determine an appropriate way to discipline and document the violation.  (ECF No. 155-5).

Pilots had several other conditions of employment that Sands Corp. controlled, such as the manner in which pilots generated time share reports and maintained flight logs.  (ECF Nos. 155-17, 155-18).  Sands Corp. also directly paid Sands Aviation's pilots and set their rate of pay. (ECF Nos. 155-16, 155-25, 155-26).  Lastly, in cases of employment termination, Sands Aviation would typically seek Sands Corp. for advice and consultation.  (ECF No. 155-5).

Defendants hired plaintiffs as PICs in furtherance of their private aviation services.  (ECF No. 144-8).  However, the nature and scope of a PIC's duties is unclear.  Defendants have provided deposition testimony showing that PICs bear greater responsibility than a SIC with regards to flights safety decisions, operational control of the aircraft, and authority over flight crew.  (ECF Nos. 144-3, 144-4, 144-5, 144-6, 144-7, 144-10).  Plaintiffs contested defendants' position by providing deposition testimony and documentary evidence showing htat PICs and SICs share most responsibilities.  (ECF No. 144-8, 157-6, 157-7).

The parties are substantially in agreement regarding the following facts pertaining to plaintiffs' employment.

James C. Mahan
U.S. District Judge

- 2 -

- Kennedy worked as a PIC from October 10, 2011, to April 20, 2017, and received an annual salary ranging from $125,000.00 to $142,151.10.  (ECF No. 144-3).

- Snider worked as a PIC from March 20, 2014, to September 2, 2016, and received an annual salary ranging from $125,000.00 to $130,049.92.  (ECF No. 144-4).

- Ward worked as a PIC from April 20, 2013, to July 4, 2017, and received an annual salary of $125,000.00 to $145,000.00.  (ECF No. 144-5).

- Weston worked as a PIC from February 10, 2014, to July 2017 and received an annual salary of $150,000.00 to $159,181.10.  (ECF No. 144-6).

- Williamson worked as a PIC from June 2011 to April 2017 and received an annual salary of $125,000.00 to $142,151.10.  (ECF No. 144-7).

Plaintiffs' annual salaries did not include overtime compensation.  *See* (ECF Nos. 144, 156).

On March 27, 2017, plaintiffs initiated this action.  (ECF No. 1).  On August 2, 2017, plaintiffs filed their first amended complaint seeking three years of unpaid overtime, liquidated damages, and attorney's fees for defendant's alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 *et seq*., which requires employers to pay time and a half for hours that employees work beyond 40 hours per week.  (ECF No. 55).  Approximately one year later, defendants filed their answers to the amended complaint.  (ECF Nos. 111, 112).

Now, the parties have filed several motions requesting multiple forms of relief, including exclusion of evidence, reconsideration of a court order, and summary judgment.  (ECF Nos. 124, 125, 127, 144, 145, 146).

II.   **Legal Standard**

   *a. Reconsideration*

A motion for reconsideration "should not be granted, absent highly unusual circumstances."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).  "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."  *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see* Fed. R. Civ. P. 60(b).

James C. Mahan
U.S. District Judge

1    Rule 54(b) permits a district court to revise an order that does not terminate the action at

2    any time before the entry of judgment. Fed. R. Civ. P. 54(b); *see also Los Angeles v. Santa Monica*

3    *Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001).   However, reconsideration is "an extraordinary

4    remedy, to be used sparingly in the interests of finality and conservation of judicial resources."

5    *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotations omitted).   A motion

6    for reconsideration is also an improper vehicle "to raise arguments or present evidence for the first

7    time when they could reasonably have been raised earlier in litigation."   *Marlyn Nutraceuticals*,

8    571 F.3d at 880.

9        *b.   Summary judgment*

10    The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

11    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

12    show that "there is no genuine dispute as to any material fact and the movant is entitled to a

13    judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is

14    "to isolate and dispose of factually unsupported claims."   *Celotex Corp. v. Catrett*, 477 U.S. 317,

15    323–24 (1986).

16    For purposes of summary judgment, disputed factual issues should be construed in favor

17    of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be

18    entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts

19    showing that there is a genuine issue for trial."   *Id.*

20    In determining summary judgment, a court applies a burden-shifting analysis.  The moving

21    party must first satisfy its initial burden.   "When the party moving for summary judgment would

22    bear the burden of proof at trial, it must come forward with evidence which would entitle it to a

23    directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has

24    the initial burden of establishing the absence of a genuine issue of fact on each issue material to

25    its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)

26    (citations omitted).

27    By contrast, when the nonmoving party bears the burden of proving the claim or defense,

28    the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

**James C. Mahan**
**U.S. District Judge**

element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.    Discussion**

Six motions are pending before the court.  First, the court will deny without prejudice defendants' motions *in limine* as premature.  Second, the court will deny plaintiffs' motion for reconsideration in furtherance of the policy in favor of adjudicating cases on the merits. Third, the

court will strike defendants' third motion for summary judgment as being in excess of the applicable page limit under the local rules.  Lastly, the court will deny defendants' first and second motions for summary judgment on the merits.

a.  *In limine*

Defendants request that the court exclude expert Christopher Poreda and expert Steven Martin's testimonies and reports.  (ECF Nos. 124, 125).  At this stage in litigation, plaintiffs have not yet determined what evidence they intend to use at trial because the parties have yet to prepare and file a proposed joint pretrial order.  Therefore, defendants' motions *in limine* are premature. *See Antoninetti v. Chipotle Mexican Grill, Inc.*, Nos. 05-cv-1660-J (WMc), 06-cv-2671 (WMc), 2007 WL 3333109 at *3 (S.D. Cal. Nov. 8, 2007) (denying plaintiff's motion *in limine* as premature because defendant has not yet determined what evidence it will introduce).

b.  *Reconsideration*

On October 23, 2018, the court denied plaintiffs' motion to strike defendants' answers. (ECF No. 114).  Plaintiffs request that the court grant reconsideration because defendants' year long delay caused plaintiffs remarkable prejudice.  (ECF No. 127).  The court disagrees and takes this opportunity to sufficiently address plaintiffs' argument.

Plaintiffs filed their amended complaint on August 2, 2017.  (ECF No. 55).  The deadline for defendants to file a response was August 16, 2017.  *See* Fed. R. Civ. P. 15(a)(3).  Defendants did not file their answers until August 3, 2018, three-hundred and fifty-one (351) days after the filing deadline.  (ECF Nos. 111, 112).

At no point during defendants' delay did plaintiffs file a motion or otherwise indicate to the court that they could not proceed without a response.  After defendants filed their answers, plaintiffs for the first time raised the issue, arguing that defendants' belated responses caused remarkable prejudice to plaintiffs' case.  *See* (ECF No. 114).  However, plaintiffs did not provide a single concrete example of how defendants' delay has caused prejudice or prevented plaintiffs from adequately litigating this action.

The guiding principle behind the court's analysis is that "a case should, whenever possible, be decided on the merits."  *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*,

James C. Mahan
U.S. District Judge

615 F.3d 1085, 1089 (9th Cir. 2010) (quotes and citation omitted).  Plaintiffs have proven that a decision on the merits is possible by fully briefing responses to three motions for summary judgment.  *See* (ECF Nos. 154, 156, 159).  The accompanying 130 exhibits further refute any allegation that defendants' delayed responses caused substantial prejudice to discovery.  *See* (ECF Nos. 155, 157, 158, 161).

The court recognizes that approximately one year passed before defendants responded to the amended complaint.  This fact, however, is not determinative.  "Even in cases where more than a year has passed since the deadline to file an answer, courts are reluctant to grant motions to strike." *Barefield v. HSBC Holdings PLC*, 1:18-cv-00527-LJO-JLT, 2019 WL 918206 at *3 (E.D. Cal. Feb. 25, 2019) (grammatical alterations added and citation omitted).

Accordingly, in order to ensure an adjudication on the merits, the court will not grant reconsideration.  *See, e.g.*, *Beal v. U.S. Dep't of Agric.*, No. cv-10-0257-EFS, 2012 WL 3113181, at *2 (E.D. Wash. July 31, 2012) (declining to strike answer filed 14 months late because a decision on the merits was possible).  The court will also vacate its October 23, 2018, order and rely on the foregoing grounds to deny plaintiffs' motion to strike.

*c.   Non-compliant document*

Defendants have filed three motions for summary judgment.  (ECF Nos. 144, 145, 146).  The first motion briefs seventeen (17) pages on plaintiffs' FLSA claim.  (ECF No. 144).  The second motion briefs eleven (11) pages on plaintiffs' FLSA claim.  (ECF No. 145).  The third motion briefs another (22) pages on plaintiffs' FLSA claim.  (ECF No. 146).

The court will not treat these documents as separate motions as they raise legal arguments pertaining to the same cause of action.  *See* (ECF Nos. 144, 145, 146).  Thus, defendants have briefed a total of fifty (50) pages in support of their motion for summary judgment—a clear violation of the thirty (30) page limit set forth in Local Rule 7-3(a).  As a remedial measure and for purposes of judicial efficiency, the court will strike defendants' third motion for summary judgment. *See Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (holding that district courts have inherent power to control their own dockets).

**James C. Mahan**
**U.S. District Judge**

1        *d.   Summary judgment*

2        Defendants argue in their first and second motions for summary judgment that (1) plaintiffs

3   are exempt from overtime compensation under the FLSA and (2) Sands Corp. is not liable for

4   plaintiffs' damages because Sands Corp. did not employ plaintiffs.  (ECF Nos. 144, 145).

5        Congress enacted the FLSA to protect workers from substandard wages and oppressive

6   hours.  *See Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 739 (1981); 29 U.S.C.

7   § 202(a).  To advance this policy, the act requires employers to pay their employees at least one

8   and one-half times an employee's regular rate of pay for hours worked in excess of forty hours per

9   week.  29 U.S.C. § 207(a)(1).  Employers that violate the FLSA are liable for the amount of unpaid

10  overtime compensation and an additional equal amount as liquidated damages.  *See* 29 U.S.C. §

11  216(b).

12       The FLSA's protection is not without exception.  Employees that receive a high level of

13  compensation are exempt.  29 C.F.R. § 541.601(c).  The FLSA also limits liability to defendants

14  that have an employer-employee relationship with plaintiffs.  *See Bonnette v. California Health &*

15  *Welfare Agency*, 704 F.2d 1465, 1469–70 (9th Cir. 1983); *see also* 29 U.S.C. § 203(d).  The court

16  addresses these defenses in turn.

17       *i.   Plaintiffs are not exempt from the FLSA as a matter of law*

18       Defendants argue that plaintiffs are exempt from the FLSA under the highly compensated

19  employee exemption.  (ECF No. 144).  A dispute of material fact precludes the court from

20  determining whether plaintiffs are exempt.

21       The secretary of labor has broad authority to promulgate regulations to define the scope of

22  FLSA exemptions.  *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1112 (9th Cir. 2001).  Under

23  these regulations, a highly compensated employee (1) has a total annual compensation of at least

24  $100,000.00; (2) customarily and regularly performs any one or more of the exempt duties or

25  responsibilities of an executive, administrative, or professional employee; and (3) has a primary

26  duty that includes office or non-manual work.  29 C.F.R. §§ 541.601(a), (c)-(d).[1]

27  _____

28       [1] Courts narrowly construe exemptions against employers.  *Arnold v. Ben Kanowsky, Inc.*,
    361 U.S. 388, 392 (1960).

James C. Mahan
U.S. District Judge

Plaintiffs meet the first element because they earned annual salaries in excess of $100,000.00.  *See* (ECF Nos. 144-3, 144-4, 144-5, 144-6, 144-7).  With respect to the second element, defendants assert that plaintiffs regularly performed administrative and executive duties. (ECF No. 144).

An employee engages in an administrative duty when he or she (1) performs office or non-manual work directly related to the management or general business operations of their employer and employer's customers and (2) exercises discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a)(2)-(3).

An employee engages in an executive duty when he or she (1) manages the employer's enterprise or recognized subdivision of the enterprise as a primary duty; (2) regularly directs the work of two or more other employees; and (3) has authority to hire or fire employees or whose recommendation to such matter is given particular weight.  *Id*. § 541.100(a)(2)-(4).  An employee need not meet all the requirements to be a highly compensated administrative or executive employee.  *Id*. at § 541.601(c).

The court cannot determine as a matter of law whether plaintiffs engaged in administrative or executive duties.  Defendants have provided deposition testimony showing that plaintiffs had operational control of the aircraft, authority over flight crew, and made flight safety decisions. (ECF Nos. 144-3, 144-4, 144-5, 144-6, 144-7, 144-10)  Plaintiffs contested defendants' claims by providing testimonial and documentary evidence showing that PICs did not engage in discretionary acts or supervise two or more employees. (ECF Nos. 157-1, 157-6, 157-9, 157-10, 157-13).  Thus, there exists a genuine dispute of material fact.

For the third and final element, office or non-manual work requires employees to perform tasks that do not involve "repetitive operations with their hands, physical skill and energy . . ." 29 C.F.R. 541.601(d).  Sands Aviation admits that plaintiffs' employment required physical stamina, manual dexterity, and exposure to CRT fatigue, noise, and smoke.  (ECF No. 112).  However, pilots also perform technical duties that require specialized training.  *See McCoy v. North Slope Borough*, No. 3:13-cv-00064-SLG, 2013 WL 4510780 at *10 (D. Ala. Aug. 26, 2013).  These discordant facts preclude summary judgment on the third element.

James C. Mahan
U.S. District Judge

1    Defendants also argue, in the alternative, that they are not liable under the FLSA because

2    plaintiffs' fall under the combination exemption. (ECF No. 144). The relevant regulation provides

3    that "[e]mployees who perform a combination of exempt duties . . . for executive, administrative,

4    professional, outside sales and computer employees may qualify for exemption." 29 C.F.R. §

5    541.708. The court has already explained that there exists a genuine dispute of fact pertaining to

6    the nature and scope of plaintiffs' duties. Therefore, the court will deny summary judgment with

7    regards to the combination exemption.

8        *ii. Sands Corp. is an employer under the FLSA*

9    Defendants argue that Sands Corp. is not liable under the FLSA because it did not jointly

10   employee plaintiffs with Sands Aviation. (ECF No. 145). The court disagrees.

11   FLSA liability applies to employers, which includes "any person acting directly or

12   indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203(d). The

13   existence of an employer-employee relationship depends on the "circumstances of the whole

14   activity." *Bonnette*, 704 F.2d at 1469 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722,

15   730 (1947)). "Two or more employers may jointly employ someone for purposes of the FLSA."

16   *Id.* (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). All joint employers are responsible for

17   compliance with the FLSA. *Id.*

18   In determining whether an employer-employee relationship exists, courts ask whether the

19   alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled

20   employee work schedules or conditions of employment, (3) determined the rate and method of

21   payment, and (4) maintained employment records." *Id.* These factors do not limit the court's

22   analysis of the "total employment situation" and "economic realities of the work relationship." *Id.*

23   Sands Corp. collaborated in Sands Aviation's hiring process by conducting background

24   checks and processing administrative papers. (ECF Nos. 155-1, 155-5). Because these

25   responsibilities can reveal grounds to prevent a pilot from receiving employment, Sand Corp. had

26   some ability to control which employees Sands Aviation hired. As for the firing process, Sands

27   Aviation would routinely collaborate with Sands Corp. before terminating an employee. (ECF No.

28   155-5).

**James C. Mahan**
**U.S. District Judge**

1    Sands Corp. also controlled several conditions of employment including how pilots would

2    maintain flight records, which policies pilots had to adhere to, and the rate of pay that pilots would

3    receive.  (ECF Nos. 155-4, 155-5, 155-16, 155-17, 155-18, 155-25, 155-26).  Moreover, Sands

4    Aviation would consult with Sands Corp. in determining appropriate documentation methods and

5    disciplinary measures for pilots that violated Sands Corp.'s policies.  (ECF No. 155-5).

6    In sum, Sands Corp. was substantially involved in plaintiffs' hiring process, firing process,

7    conditions of employment, rate of pay, and disciplinary measures.  These circumstances establish

8    that Sands Corp. had an employer-employee relationship with plaintiffs.  Therefore, the court will

9    deny defendants' second motion for summary judgment and hold that defendants jointly employed

10   plaintiffs.

11   **IV.    Conclusion**

12   Accordingly,

13   IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' first motion

14   *in limine* (ECF No. 124) be, and the same hereby is, DENIED, without prejudice.

15   IT IS FURTHER ORDERED that defendants' second motion *in limine* (ECF No. 125) be,

16   and the same hereby is, DENIED, without prejudice.

17   IT IS FURTHER ORDERED that plaintiffs' motion for reconsideration (ECF No. 127) be,

18   and the same hereby is, DENIED, consistent with the foregoing.

19   IT IS FURTHER ORDERED that the court October 23, 2018, order (ECF No. 123) be, and

20   the same hereby is, VACATED.

21   IT IS FURTHER ORDERED that plaintiffs' motion to strike (ECF No. 114) be, and the

22   same hereby is, DENIED, consistent with the foregoing.

23   IT IS FURTHER ORDERED that defendants' first motion for summary judgment (ECF

24   No. 144) be, and the same hereby is, DENIED, consistent with the foregoing.

25   IT IS FURTHER ORDERED that defendants' second motion for summary judgment (ECF

26   No. 145) be, and the same hereby is, DENIED.

27   . . .

28   . . .

**James C. Mahan**
**U.S. District Judge**

1         IT IS FURTHER ORDERED that defendants' third motion for summary judgment (ECF

2  No. 146) be, and the same hereby is, STRICKEN.

3         DATED May 28, 2019.

4

                                      _____

5                                    UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**